THE CHARLES H. HEER DRY-GOODS COMPANY *et al.*,
Respondents, v. CITIZENS RAILWAY COMPANY,
Appellants.

### St. Louis Court of Appeals, April 29, 1890.

1. **Obstruction of Public Highway : RIGHT OF ACTION BY PRIVATE
   PERSONS.** A private person has a right of action for the illegal
   obstruction of a public highway by another, if he is damaged dif-
   ferently than the public at large, not merely in degree but in kind.

2. ——— : ——— : INJUNCTION. It appearing that a retail dry-goods
   store fronted on one of the streets of a city leading to the public
   square, and being but seventy-five feet from the square ; that the
   street was narrow after it left the public square ; that it had
   upon it one street railroad track ; that the street railroad company
   was about to lay upon it another track, and to operate its road
   therein, without legal warrant ; that the obstruction of the street
   which would thus ensue would block up the street, and, by imped-
   ing and preventing the access of vehicles to the store from the
   public square, would divert business from said store, *held* that,
   although the additional track would go only up to the store and
   would not be in front of any part of it, both the occupant and the
   owner of the premises would be especially injured by it, the for-
   mer by the diversion of trade, and the latter by the consequent
   diminution in value of his premises ; and, *held*, further, that an
   injunction to restrain the laying of the track was a proper remedy.

*Per Thompson, J.:*

3.   Under Revised Statutes, 1889, section 2303 a decree enjoining
a threatened illegal obstruction of a public highway, though made
at the suit of a private individual, should not be reversed, if it be
doubtful whether the plaintiff will suffer damages different in
kind from those of the public generally, or whether his damages
can be adequately redressed in an action at law.

*Appeal from the Greene Circuit Court.*—HON. W. D.
HUBBARD, Judge.

AFFIRMED.

·*C. B. McAfee*, for appellant.

(1)   The petition shows that defendant was already
lawfully upon Boonville street, and for a long time had
been operating its railroad, and its complaint simply
means that defendant threatens to repair its existing
track, or put a switch by its side.   It is not a new or
additional track, for it is only one hundred feet long,
and is to be operated with the existing track, as the
petition concedes.   The construction of it is, therefore,
not within section 1576 of the Revised Statutes of 1889.
The conceded right of the defendant to use the street for
its railroad involves the right to make passing switches.
*Hovelman v. Railroad*, 79 Mo. 632.   (2)   Plaintiffs are
not specially damaged above others having property on
Boonville street.   They do not aver that they are the
only persons dealing with ladies who ride in chaises on
Boonville street, and, if they are, the special damages
they plead are not such as the law contemplates and
which would entitle them to an injunction.   Will not
all other property-owners on Boonville street be dam-
aged by this threatened switch and standing cars at its
intersection with the public square if plaintiffs are?
Will the injury to plaintiffs be different in character
to that which others on that street will suffer?   It is not
enough that they may be damaged to a greater degree.

*Crowly v. Davis*, 63 Cal. 460 ; *Dwenger v. Railroad*, 98 Ind. 153 ; *Bigley v. Nunan*, 53 Cal. 403 ; *Payne v. McKinley*, 54 Cal. 532 ; *Rude v. City of St. Louis*, 93 Mo. 408 ; *Bailey v. Culver*, 12 Mo. App. 184, affirmed in 84 Mo. 531. The petition not only fails to show that plaintiffs are abutting property-owners, but shows by their averments that they are not. They are not, therefore, in a condition to invoke the inhibitions of section 1576. Besides there is no power in an individual, whose property is not actually taken or disturbed, to restrain acts alleged to be *ultra vires*. *Chambers v. City of St. Louis*, 29 Mo. 443 ; *Kennedy v. Railroad*, 69 Mo. 663 ; *Martindale v. Railroad*, 60 Mo. 510 ; *Land v. Coffman*, 50 Mo. 243 ; *Shewalter v. Riner*, 55 Mo. 218 ; *Bank v. Hunt*, 76 Mo. 439 ; *Hovelman v. Railroad*, 79 Mo. 632 ; *Patterson v. Railroad*, 75 Ill. 588. This last case is decisive of this point.

*Goode & Cravens*, for respondents.

(1) The statute would seem to be decisive of the present case. By its terms three conditions must be performed before a railway can be lawfully constructed on a city street, or any part of one : *First.* The permission of the council must be obtained. *Second.* Before it is located, a majority of the residents, or owners, of abutting property on the street, or part to be occupied, must assent to the location, in writing. *Third.* Before construction, damages to the abutting lands must be ascertained and paid. R. S. 1889, sec. 1576 ; Laws of 1887, p. 64, sec. 107. (2) The right to occupy the streets of a city with street railway tracks can only be granted by the legislature, or by the municipality acting pursuant to statutory powers. Dillon on Munic. Corp. [3 Ed.] sec. 715 ; *State ex rel. v. Railroad*, 85 Mo. 262. Permission to lay one track of a horse railway along a street is not sufficient to warrant the laying of another track along a part of the street.

*Roberts v. Easton,* 19 Ohio St. 78, a case identical in principle with the one at bar; *Railroad v. Reed,* 41 Cal. 256; *Railroad v. Denver City Co.,* 2 Col. 678. A railway laid over or on a highway or street so as to obstruct it, without express statutory authority or necessary implication, is liable to indictment as a nuisance. Dillon Mun. Corp. [3 Ed.] sec. 708; *Commonwealth v. Railroad,* 14 Gray, 93. And the company may be enjoined from laying down their track by the public authorities, or by lot-owners specially injured. Dillon Mun. Corp. [3 Ed.] secs. 708, 660, and note; *Railroad v. Shields,* 33 Ga. 601. Any continuous obstruction of a public highway not authorized by competent legal authority is a public nuisance. Dillon, *supra,* note to sec. 660; *Davis v. Mayor of New York,* 14 N. Y. 506; *Barney v. Keokuk,* 94 U. S. 324. (3) A public nuisance will be restrained at the suit of a private person who suffers therefrom especial and particular injury, distinct from that suffered by him in common with the public at large. 3 Pomeroy's Eq. Jur., sec. 1349; Wood on Nuisances, sec. 645; *Grimes v. Van Studdiford,* 4 Mo. App. 503; *Gay v. Tel. Co.,* 12 Mo. App. 493; *Soltan v. De Held,* 2 Sim. N. S. 133; *Burrows v. Pixley,* 1 Root, 362; *Lansing v. Smith,* 4 Wend. 89; *Mills v. Hall,* 9 Wend. 316; *Myers v. Malcom,* 6 Hill, 296; Wood on Nuisance, sec. 647, p. 720; *Hart v. Bassett,* 7 Jones, 156; *Ross v. Butler,* 19 N. J. Eq. 294; *Haskell v. New Bedford,* 108 Mass. 216. And whether the injury be to person or property is immaterial. Wood on Nuisances, sec. 648; *Robert Morry's Case,* 9 Coke, 112; *Hobson v. Todd,* 4 T. R. 73; *Greene v. Nunemacher,* 36 Wis. 50. Public nuisance occasioned by obstruction of highway by unauthorized railway track may be enjoined by individual specially damaged. Dillon on Mun. Corp. [3 Ed.] sec. 708; *Railroad v. Denver City Co.,* 2 Col. 678; *Davis v. Mayor,* 14 N. Y. 506; *Milhau v. Sharp,* 27 N. Y. 611; *Railroad v. Shields,* 33 Ga. 601, *Roberts v. Easton,* 19 Ohio St. 78.

THOMPSON, J.—This is an action by private parties against a street railway company to enjoin it from laying a sidetrack upon a street in the city of Springfield, already occupied by its main line. The defendant demurred to the petition; the demurrer was overruled; the defendant elected to stand on its demurrer, and the court thereupon entered final judgment as follows:

"And it is by the court ordered and adjudged that the injunction heretofore granted in this action be, and is hereby made, perpetual until the defendant shall obtain lawful authority to lay said additional track, and the defendant is hereby enjoined from laying an additional track from a point on the public square in the city of Springfield, Missouri, twenty-five feet south of where Boonville street enters said square, to a point on said Boonville street seventy-five feet north of said square, until the right to lay such additional track has been by defendant obtained by a compliance with the law regulating such cases; and it is further considered and adjudged that the said plaintiffs recover against the said defendant the costs in this suit expended."

The petition which the court thus sustained is as follows:

"The plaintiffs state that the defendant is a corporation organized under the laws of the state of Missouri, and is engaged in the business of operating a street railroad in the city of Springfield.

"That the plaintiff Charles H. Heer owns a large, three-story brick storehouse on the west side of Boonville street in said city, in which the plaintiff, the Charles H. Heer Dry-Goods Company, is engaged in carrying on a large retail dry-goods store. That said storehouse is about seventy-five feet north of the public square of said city, and on said street in front of the said storehouse the defendant has now, and for a long time past has had, a street-car track laid, along which, and over which, the cars are drawn by horses and mules.

"That said Boonville street is a narrow street, being only about forty (40) feet from the curbstone on one side of it to the curbstone on the other side.

"That, in the course of the business of said Charles H. Heer Dry-Goods Company, many carriages, buggies and other vehicles conveying its customers and patrons have to pass onto said Boonville street from said public square, and there is at present not room to accommodate them, and to allow them to pass freely, on account of the narrowness of said street, and the fact that defendant's cars stand on said track very often during the day at the place where said street enters the square.

"That defendant is now about to lay another track, parallel to its present one, from a point on said square about twenty-five (25) feet south of said street to a point in said street about seventy-five (75) feet north of the square.

"That the avowed object and purpose of the defendant in laying said additional track is to arrange to have two cars at once stand in said street, side by side, at a place where said street enters the square.

"That said additional track is not necessary to the business of said company, and will (together with the running and standing of the cars thereon) greatly impede travel and the passage and running of carriages and other vehicles on said street, and will greatly and irreparably obstruct and damage it as a business street, and will tend to, and will, drive business away from and off said street onto other streets of said city.

"That the business of said Charles H. Heer Dry-Goods Company largely consists of selling goods at retail to ladies, who go to stores to do their shopping in carriages and other vehicles.

"That these customers of said plaintiff will, by the obstruction of said street by said contemplated additional track of defendant, and by the standing and passing of its cars thereon, and by the diminished room for

entering said street from the square, and for hitching and standing their carriages, thereon, and for driving thereon, be prevented from buying goods, as they heretofore have done, from said plaintiff, so that plaintiff will be specially damaged by the laying of said additional track.

"That the said storehouse of the plaintiff Charles H. Heer will be rendered less useful and desirable as a place of business by said additional track, and the obstruction to said street which it will cause, and will not yield to said plaintiff as much rental as it now does, whereby he will be specially damaged by said track.

"That said defendant has no authority or permission by resolution or ordinance of the city aforesaid to lay said track, nor have a majority of the citizens, owning property on the portion of said street along which said track is to be laid, assented to the laying of it in writing.

"That said defendant, furthermore, proposes to construct and lay said track without first ascertaining and paying, as the law requires, to the owners of abutting property such damage as they will sustain by said additional track.

"Wherefore plaintiffs pray that, inasmuch as they are without adequate remedy ——— law, a writ of injunction may be issued, prohibiting said railway company, its officers, agents and servants from laying said track and for other proper relief."

The chief objections taken to the petition by the demurrer, and renewed in argument in this court, are: *First.* That it does not state facts which show that the additional track, if laid, will subject the plaintiffs to damages different in *kind* from that sustained by the general public. *Second.* That, even if it does state facts which show this, it does not state facts which show that the damages will be of such a nature that they cannot be redressed in an action at law.

It is perceived that the petition does not charge, in terms which exclude the possibility of exceptions, that the defendant is proceeding to lay the additional track without any lawful authority whatever. It does charge that "said defendant has no authority or permission, by resolution or ordinance of the city aforesaid, to lay said track; nor have a majority of the citizens, owning property on the portion of said street on which said track is to be laid, assented to the laying of it in writing." This paragraph of the petition was evidently drawn to meet a provision of the Revised Statutes of 1889, applicable to cities of the third class, which is as follows: "The council shall have sole authority, by ordinance, to grant the right to any person or persons, corporations or company, to make and construct railroads or street railroads in any street in said city, and to regulate and control the use thereof: *Provided*, that no such railroad shall be located on any street or alley in said city, or any portion of said street or alley, until a majority of the residents, owners of land abutting on said street or alley, or such portion thereof, shall first assent thereto in writing; *and provided, further*, that no such railroad shall be constructed or operated until all damages to such abutting lands shall have been first ascertained and paid to the owners thereof by the person, company or corporation constructing said railroad; and the city council shall pass suitable ordinances providing the manner and way of ascertaining said damages." R. S. 1889, sec. 1576. It is not averred in the petition that the city of Springfield is organized as a city of the third class; and while we cannot take judicial notice that such is the fact (*City of Springfield v. Whitlock*, 34 Mo. App. 646), we apprehend that we ought not to make our decision turn on this defect in the petition, because the printed arguments, which have been filed, seem to assume that such is the fact.

We must, therefore, conclude from the averments of the petition that the defendant is proceeding to lay the additional track without authority of law. Against this conclusion it is argued, on behalf of the defendant, that the petition impliedly shows that the defendant is lawfully engaged in operating its main track on Boonville street, and that the right to lay additional sidetracks for switching purposes is to be regarded as a mere incident to the right to lay and operate a main-street railway track. This conclusion is inconsistent with another averment of the petition, "that said additional track is not necessary to the business of said company." If the position of counsel for the defendant is correct, the implication would extend no further than to give the street railway company, having the franchise of operating a street railway upon a given street, the right to lay such additional sidetracks for switching purposes as might be necessary to the transaction of its business and the service of the public.

We infer from the petition that Boonville street enters the public square from the north, in such a manner that the prolongation of the street extends along one of the margins of the square; that the building owned by the plaintiff Heer, and occupied by the plaintiff the Charles H. Heer Dry-Goods Company, abuts on Boonville street about seventy-five feet north of the public square; that the additional track which the defendant threatens to lay commences twenty-five feet south of the intersection of Boonville street with the public square, and extends one hundred feet north, twenty-five feet of its extent being along the margin of the public square, and the remaining seventy-five feet extending into Boonville street as far as the south line of the building owned by the plaintiff Heer, and occupied by the other plaintiff the dry-goods company. The building in question does not, therefore, abut against any portion of the street upon which the

defendant threatens to lay the additional track, but the track will terminate at its north end at a point, so to speak, opposite the southern line of the plaintiff Heer's building.

We direct attention to these portions of the petition for the purpose of making it appear that we regard the petition as stating that the defendant is threatening, without authority of law, to lay an additional street railway track upon Boonville street and to stand its cars thereon; that the effect of such track, if laid, and of the standing of cars thereon, will be so to obstruct the street (which is a narrow street at its entrance to the public square), as to impede and prevent vehicles from being driven into the street, whereby the rental value of the building of the plaintiff Heer, which is a brick storehouse three stories high, will be diminished, and whereby the business of the dry-goods company which occupies the building will also be diminished. The two questions above stated seem, therefore, to be fairly presented by the record.

I.   If the plaintiffs were abutting owners, the question would seem to be clear of doubt on the authority of *Dubach v. Railroad*, 89 Mo. 483, where it was held that, if a railroad company attempts to lay its track upon the street of a city in such a manner as to deprive the public of the use of the street, an abutting owner, sustaining special damages thereby, can have an injunction to restrain such a use of the street. See also *Belcher Sugar Refining Co. v. Elevator Co.*, 82 Mo. 124. But the question with which we have to deal is, whether any other owner, save one whose property abuts on the portion of the street affected, can have such a remedy.

We should not have much doubt upon the question, but for the language employed by the judges in some of the decisions in this state,—language which, as we shall show, was not necessary to the decision of the

questions before the court. In *Bailey v. Culver*, 12 Mo. App. 175, 184, the following language appears in the opinion of this court, written by Judge LEWIS: "The owner of a lot abutting on a public street or alley has a vested right in the easement, coextensive with his boundary line, as a means of egress into the outer world from any part of his lot contiguous therewith. This right is as fully protected against invasion by legislative or municipal agencies, as the right to his house or his farm. But, beyond the limits of contiguity with his lot, his rights in the easement are only those of a member of the public at large. If he could claim more than these at a longitudinal distance of fifty feet from his lot, he could claim the same at the distance of a mile, or of ten miles. The plaintiffs in this case have the same rights on St. Charles street that they have on the alley. If they are entitled as individuals to object to the vacating of the alley by municipal authority at a distance of two hundred feet from their property, other egress being still provided for them, they would be equally entitled to interfere against any undertaking by the same authority to alter the direction of St. Charles street at a point five miles away. Their rights in the highway are simply those of egress and approach. It is true that these rights may be unlawfully prejudiced by an obstruction at a distance from the plaintiff's property, if the effect be to deprive them of communication with the outer world, or to exclude them from the general system of public highways."

This decision was affirmed by the supreme court. *Bailey v. Culver*, 84 Mo. 531. That court in its opinion restated the general doctrine that, "the plaintiffs, in order to obtain the extraordinary relief for which they pray, must show a special injury other than, and different from, that which they suffer in common with the general public ; for it is settled law that, where a highway is altered, obstructed or altogether vacated, no

action will lie except by him, who 'has greater trust or incommodity than every other man has;'" citing *Kinealy v. Railroad*, 69 Mo. 658, 663, where the same expression is used.

The question again came before the supreme court in *Rude v. St. Louis*, 93 Mo. 408, and in the opinion of the court, given by BLACK, J., the following language occurs: "Generally, where damages have been awarded to a property-owner for an obstruction in the street, the obstruction has been in that part of the street upon which the property fronted; yet it cannot be said that this is always essential to a recovery. The property may not be on the street, yet may communicate with it by means of a private way, in which event it would seem that an obstruction at the private way would be an infringement of a private right."

The observations of Judge LEWIS in *Bailey v. Culver*, 12 Mo. App. 175, 184, were entirely unnecessary to the decision of that case. The plaintiffs sought to enjoin, not the obstruction, but the *deflection* of an ·alley, their property being situated two hundred feet from the point of deflection. If their injunction had been granted, it would have resulted in tearing down an extensive building erected by the defendant, and in doing him infinitely more injury than any benefit, which could possibly have accrued to them. This will be quite apparent from the map of the property exhibited in the report of the case in 84 Mo. at page 533. What they complained of not only did not cut off the use of the alley in that direction, but, as was pointed out by the opinion of SHERWOOD, J., in the supreme court, it did not obstruct it to their damage. "The evidence," said he, "abundantly establishes that the deflected alley is equally, if not more, convenient for ingress and egress than the old one, and that the increase in distance to the point where the old alley opened on Eighth street, in consequence of the closure, is not a matter of any

considerable importance." The court placed its decision largely upon the great injury which would accrue to the defendant from granting the prayer of the petition, and the slight damage, if any, which would accrue to the plaintiff from withholding it. But, if the language of Judge LEWIS could have been accepted as a correct statement of the law at the time when his opinion was written, it appears from the opinion of BLACK, J., in the later case of *Rude v. St. Louis*, as above quoted, that it can no longer be accepted to be such; for there it is conceded that it is not always essential to a recovery of damages that the obstruction in the street should have been in that part of the street along which the plaintiff's property fronted. The illustration given by Judge BLACK, that "the property may not be on the street, yet may communicate with it by means of a private way, in which event it would seem that an obstruction at the private way would be an infringement of a private right," must, we take it, be regarded as only one illustration which then occurred to his mind, or which he thought it necessary to give, of the conclusion, that property-owners, whose property does not abut upon the street, may have a private action for damages for an obstruction of the street.

The case of *Rude v. St. Louis, supra*, did not present facts which necessarily called for any observations on the question, because in that case the obstruction complained of was situated five hundred feet from the plaintiff's property, and two intervening cross streets existed between his property and the obstruction.

The facts of that case were essentially different from the facts of the case before us, in this, that the obstruction of the street in that case did not leave the plaintiff's property in a *cul de sac*, so to speak, but it left him with abundant means of ingress and egress in both directions. "The plaintiff," said BLACK, J., "has perfect access to his property. It is only when he goes south, passing

Scott avenue and another street, that he comes in contact with the obstruction, the nuisance. His inconvenience, and that of persons going to and from the grocery, is precisely the same in kind as that of all other persons who desire to use High street. His may be greater in degree, but not different in kind. The nuisance is a public one, and the physical facts show that the damages to the property are due to a public, and not to a private, wrong." These observations have but an imperfect application to the facts of the case before us.

The supreme court reaffirmed the case of *Rude v. St. Louis*, *supra*, and applied it in a case involving the same obstruction, where the facts were so far analogous that the plaintiff's property was three hundred and fifty feet from the obstruction. The report does not show whether there were any intervening cross streets or not; but it is to be inferred that there were. *Fairchild v. St. Louis*, 97 Mo. 85. The court reaffirmed the same doctrine, in respect to the same obstruction, in another case where the plaintiff's property was situated only one hundred and twenty-five or one hundred and thirty feet from the obstruction ( *Canman v. St. Louis*, 97 Mo. 92 ); but the report of the case is so brief, that it does not appear that the obstruction left the plaintiff's property, or the business carried on therein, in the situation in which the present obstruction would place the property and business of these plaintiffs.

There is no difficulty in understanding the general principle upon which these cases proceed,—that, in order to entitle a property-owner or occupier to maintain an action for damages, and for stronger reasons to maintain an action for an injunction, it must appear that the damages, which have accrued or will accrue to him, are different in kind, and not merely in degree, from those which have accrued, or will accrue, to other members of the community. Courts have frequently remarked upon the difficulty of applying the rule to

facts, and in its application a great contrariety of decisions is found: I take occasion to state here that my examination of this question leads me to believe that the rule, as formulated by our supreme court, that the damages must be different, not merely in degree but also in kind, from those sustained by the general public, is not supported by the weight of authority; and I am of opinion that it is unsound in principle. It furnishes, nevertheless, the rule for our guidance in this case. English decisions upon the right of private action in such a case go back to year-book times, and support the conclusion that such an action may be maintained, where, by reason of the peculiar situation of the plaintiff, the obstruction cuts off his access to and egress from his premises or place of business ( *Greasly v. Codling*, 2 Bing. Rep. 263 ; *Iveson v. Moore*, 1 Ld. Raym. 486 ; s. c., Willes, 74, note *a* ) ; or renders it more tedious ( *Blagrave v. Water Works Co.*, 1 Hurl. & N. 367 ; s. c., 26 L. J. Exch. 57; *Wiggins v. Boddington*, 3 Carr. & P. 544 ) ; or more circuitous ( *Hart v. Bassett*, Sir. T. Jones, 156 ; *Rose v. Miles*, 4 Maule & S. 101 ); and hence more expensive. In the opinion of this court in *Gay v. Tel. Co.*, 12 Mo. App. 485, 493, citing these authorities, we assume the rule to be that an obstruction of such a nature as to turn the tide of travel away from the door of a building, so much as to injure the plaintiff's trade, if a tenant, or his rents, if a landlord, would be such an obstruction of the highway as, if otherwise unlawful, would be enjoined in equity. But we did not regard that case as one presenting such a state of facts.

Since the decision of the supreme court in *Rude v. St. Louis*, *supra*, and in the other cases above cited which have followed it, it must be concluded that the mere fact that the obstruction of a highway is so situated with reference to the property of the plaintiff, that it will oblige him to take a more circuitous route to get to a particular place beyond the obstruction, will

not give him a private action for damages. But it does not follow from this that cases may not exist where the obstruction, by reason of its nearness to the plaintiff's property, or other circumstances, will inflict upon him such serious and special damage as must be regarded as damage differing not only in degree, but also in kind, from that sustained by the general public; and such in our opinion is this case. This is shown by two cases, one decided in England, and one in this country, both of which appear to have acquired the standing of leading authorities.

In *Wilkes v. Hungerford Market Co.*, 2 Bing. N. C. 281, the plaintiff was a bookseller, occupying a shop by the side of a public thoroughfare. He suffered in his business in consequence of passengers having been diverted from the thoroughfare by an unauthorized obstruction placed across it by the defendant for an unreasonable time. In an action at law for the damages he alleged that, by means of the obstruction, he was prevented from carrying on his trade and business in as large, ample and beneficial a manner as he otherwise might and would have done, and that, during the time that the obstruction existed, he had lost and been deprived of divers great gains and profits which might, and otherwise would, have arisen and accrued to him from carrying on the trade and business of a bookseller in his messuage and premises. At the trial he established by evidence these allegations, and obtained a verdict. On the hearing of a motion for a nonsuit, notwithstanding the verdict, it was argued that the facts constituted merely a public nuisance, to be redressed by an indictment, but for which a private action would not lie. The whole court decided otherwise. The cases from the time of the year books were examined. The effect of the case was to overrule the doubtful decision of Lord KENYON in *Hubert v. Groves*, 1 Esp. 148, and to establish the doctrine that, where a tradesman, occupying a shop on a street in a city, is situated so near an

obstruction in the street that his trade and business are diverted from him by reason of it, he may maintain an action for damages against the author of the nuisance.

The other leading case to which we refer is the decision of the supreme judicial court of Massachusetts in *Stetson v. Faxon*, 19 Pick. 147 ; s. c., 31 Am. Dec. 123. In that case the plaintiff owned a warehouse facing southerly on a way, which had been used and recognized by the city of Boston as a street for more than sixty years, although no record was in evidence of the laying out of such way. The city laid out a new street to the south of this ancient one, running in front of the plaintiff's warehouse, and thereafter sold to the defendant, who also had a warehouse to the east of the plaintiff's, and separated therefrom by a narrow alley and facing the ancient way, the fee in this ancient way in front of his warehouse to the north line of the new street. The defendant then proceeded to erect a new warehouse on his original lot, covering it and the portion of the ancient way bought by him. This new structure extended beyond the plaintiff's building thirty-six feet, and the special injury alleged to be thereby occasioned was the obscuring and darkening of the plaintiff's warehouse, the obstructing the free communication therewith which formerly existed, the blocking of the alley with building materials, so as to deprive the plaintiff wholly of the use thereof, the loss of tenants, expenses of repairs and alterations to induce tenants to continue in the occupancy thereof, and the reduction of rent occasioned by impairing the value of the warehouse. The plaintiff, in an action for the damages thus occasioned, had a verdict for four thousand and ten dollars and twelve cents. On a motion for new trial, the verdict was sustained by the whole court in a learned opinion by PUTNAM, J. The decision of the court was placed, not only upon the case of *Wilkes v. Hungerford Market Co., supra*, but upon several other

English adjudications of recognized authority. A reading of the opinion shows that the court proceeded upon the view that the plaintiff had suffered an actual and particular injury to his trade and estate from a public nuisance, for which a public action would not afford him redress.

Numerous other American decisions could be collected, where, upon facts more or less analogous, the same conclusion has been reached; but it is thought unnecessary to go into them, for it is to be confessed that many can be found where the courts have taken the opposite view. We take it that, where the portion of the street to be obstructed lies but seventy-five feet from the public square of the city, a place which is presumptively the most public place in the city; that where the street is so narrow that there are but forty feet between the sidewalks; that where the obstruction is of such a nature that it will probably prevent a considerable portion of the public travel in vehicles from entering the street from the public square,—it is easy to conclude that the occupier of a retail business house so situated will be particularly injured by customers being turned away from him to competitors, and that his injury is not merely the injury which the general public sustains by the partial obstruction of the street in finding its passage more difficult, or in being perhaps obliged to take a circuitous route to reach a given point, but that it is an injury which is peculiar to him by reason of the peculiar situation of his property. We may, moreover, justly conclude that an obstruction to the street, which will thus work an injury to the trade carried on in the building by its tenants, will diminish its rental value and thus work an injury to its owner.

Some argument in favor of this conclusion is to be derived from the fact that the statute above quoted (Revised Statutes, 1889, sec. 1576) recognizes the interest of abutting lot-owners in so far as to prohibit the

location of street railroads on streets without the consent of a majority of them. Nor does the statute, as counsel for the defense argue, restrict the necessity of obtaining such consent to those lot-owners whose lots front on that portion of the street intended to be occupied by the railway,—although it may be conceded, that, in the case of a long street, remote lot-owners would have no interest in the matter. It should seem that abutting owners within the particular block, a portion of the street in which is sought to be occupied by the railway, are within the intent of the statute, although their lots may not be immediately in front of any portion of the street intended to be occupied.

II. It remains to consider whether the damages which will probably accrue to the plaintiffs from the threatened injury are of such a nature that "an adequate remedy cannot be afforded by an action for damages," within the meaning of section 5510, of the Revised Statutes of 1889. Revised Statutes, 1879, sec. 2722. The policy of this statute seems to be to enlarge the preventive remedy by injunction, where the plaintiff's right is clear; where the threatened injury is plain, serious and likely to be continuous; where the benefit to the plaintiff would not be slight as compared with the injury which would accrue to the defendant from an injunction; and where the damages, though serious, are of such a nature as not to be capable of measurement by any exact standard which the law can furnish. All these elements seem to concur in the present case, if the facts stated in the petition are true, and the demurrer admits them to be true. The right of the plaintiffs to have the street remain as it debouches into the public square, without further obstruction, seems to be clear. The injury which will accrue from a deprivation of that right will probably be serious, continuous and incapable of estimation in damages by any exact legal standard. The defendant threatens to subject the street to

an additional servitude, which will constitute a partial obstruction of it at its entrance into the public square, without authority of law. It is not necessary to the defendant's business that it should impose this additional servitude upon the street and place this additional obstruction therein. This seems to entitle the plaintiffs to injunctive relief. As to the form of the injunctive order no objection is made. In so far as it is a conditional injunction, restraining the defendant from thus occupying the street, until it acquires lawful authority so to do, it has been framed with careful regard to the defendant's rights.

It also deserves consideration that the reason, on which the courts proceed in denying an action for damages to a single individual who is not specially damaged as distinguished from the rest of the public, within the rule above stated, is that, to allow such a private action would operate to subject the defendant to a multiplicity of suits to redress a public injury, which is against public policy. This reason has been reiterated in most of the cases since the decision in *Williams' case*, 5 Co. Rep. 73, where the reason for the rule was thus formulated : " For by the same reason every one might have an action, and then he would be punished a hundred times for one and the same cause." Where, as in the case before us, the defendant is a naked wrongdoer, such a reason is entitled to no great respect ; for, as was said by Chancellor WALWORTH in *Lansing v. Smith*, 4 Wend. 9 ; s. c., 21 Am. Dec. 9, it seems poor 'defense for him "to say that he has injured many others in the same way, and that now he will be ruined, if he is compelled to make compensation to all." But it is to be observed that this reason, whatever may be its merits, has no application whatever to such a case as that before us, where one or more members of the public, who think themselves specially and particularly damaged, proceed by injunction to prevent the threatened injury before it

is done. If they succeed in obtaining an injunction, they bring about the very result which the old cases intended to accomplish by withholding a private action for damages; they, by stopping the wrong altogether, prevent any possibility of a multiplicity of actions by private persons who may be damnified.

III. I wish to add for myself a further observation in which I regret to say that my associates do not concur with me. We have a statute which prohibits us from reversing judgments for causes which do not affect the merits of the controversy. R. S. 1879, sec. 3775; R. S. 1889, sec. 2303. This statute was framed to prevent the evil of the multiplication of new trials for merely technical reasons,—through what I may be permitted to term the abuse of technicality. Lawyers, who are habituated to reasoning on technical lines, have been slow to give such statutes their full beneficial application. I do not hesitate to say that, in my judgment, this statute has been much too narrowly construed, and too little applied by appellate judges in this state. I am of opinion that it applies to the case now before us, so as to prohibit us from reversing this judgment, even if we are in doubt as to the proposition, whether the plaintiffs have such a relation to the subject-matter of the controversy as entitled them to maintain a private action for injunctive relief, or as to the proposition whether their damages, if any, are capable of being adequately redressed by law. If we reverse this judgment on the former ground, we reverse a judgment which prevents a public wrong, and we thereby reinstate the wrong, merely because the persons who proceed to prevent the wrong were not the right persons so to proceed. If, moreover, we reverse it for the reason that they have an action for damages at law, we stand in the position of reversing a judgment which prevents a wrong, merely because the plaintiffs have not taken the right road to the right result. Our reversal would

leave the law in respect of this question in this incongruous shape, that, while a private party thus damnified by the unlawful purpresture of a highway may remove the nuisance by main strength without incurring liability for damages, on the theory that in so doing he represents the public '( Cooley on Torts, star p. 46; Wood on Nuisances, sec. 733 ), yet, if he accomplishes this result without a risk of a breach of the peace, and through the more appropriate method of a judicial proceeding, we will reverse the judgment which he has obtained, turn him out of court, saddle him with the costs and leave him to the remedy, which the common law gives him, of abating the nuisance by force of arms, or of suing for damages.

For the reasons above stated, the judgment will be affirmed. It is so ordered. All the judges concur, except as above stated.