GEORGE NEW, ET AL., APPELLANTS, v. THE SOUTH DAVIES COUNTY DRAINAGE DISTRICT, ET AL., RESPONDENTS.—220 S. W. 2d 79.

Kansas City Court of Appeals. Opinion delivered April 4, 1949.

*Morgan & Miner, J. P. Morgan and Wm. A. Miner* for appellants.

*Dean H. Leopard, Randall R. Kitt* and *Wilder Lintner* for respondents.

812

CAVE, P. J.—The appellants, as plaintiffs below, brought this suit against the respondents for a mandatory injunction to compel the defendants to build, repair and fix a certain bridge over a certain drainage ditch where it intersects a public highway, and to enjoin defendants from obstructing the highway at such intersection. The defendants are the Drainage District and the members of its Board of Supervisors. Grace French withdrew as one of the plaintiffs. All of the defendants except the District joined in a motion to dismiss the suit and the petition on the grounds that the petition failed to state a claim against such defendants upon which relief could be granted to the plaintiffs, or any of them; and that the plaintiffs do not have the power, authority, legal right or legal capacity to sue or maintain the action, and that the court, therefore, is without jurisdiction of the cause. The motion was sustained and the cause was dismissed. The judgment of dismissal was not limited to respondents but purported to dispose of the entire cause as to all the defendants. Plaintiffs have appealed. The defendant District, so far as the record shows, has not yet been summoned or served, nor has it filed any pleading in the cause. Respondents contend that the District is therefore not a party to the cause.

In substance the petition alleges that the plaintiffs for many years have been and are now the owners of certain tracts of land in Daviess County, Missouri; that the Drainage District was incorporated by the Circuit Court of that county on May 4, 1920, for a period of 50 years; that all of the land in the District is located in Daviess County; that the individual defendants are duly elected, qualified and acting members of the Board of Supervisors of the District; that J. B. Weldon is the duly elected president of the Board of Supervisors of the District; that the necessary statutory steps were thereafter taken resulting in a Plan of Reclamation and obtaining necessary rights-of way and easements by the District. It is further alleged that pursuant to the Plan of Reclamation the District constructed a ditch or canal known as the "Main Ditch" in the District, in accordance with the Plan; that at the time such "Main Ditch" was dug and constructed and long prior thereto there existed a public highway, as described, which at all times has been under the supervision of the county court of Daviess County or Jackson Township thereof, and has been kept and repaired as a public road or highway by plaintiffs and others.

It is alleged that the ditch so constructed by the District cut through the roadbed of the public road described, at a certain point, and at such point of intersection the District constructed a bridge connecting the public road across the "Main Ditch"; that the bridge was used by plaintiffs and the general public until May, 1944, when the bridge, due to lack of repair or to excessive flow of water in the Ditch, gave way at one end and dropped into the water bed; that the bridge was permitted to remain in such suspended position by the District until the remaining approach became loose and gradually fell into the bed of the "Main Ditch", where it now remains; that the bridge in its present condition constitutes an obstruction to the public road at the point of intersection with the "Main Ditch", and that the use of the road by the plaintiffs and general public is of great importance to the people residing in the community, and such use is now prevented by the obstruction described.

The petition alleges that it is the common law and statutory duty of the defendants to construct, maintain and keep the bridge and approaches in a reasonable state of repair over the drainage ditch at the point of intersection; that the defendants refused to put the bridge and approaches thereto in a reasonable state of repair for the use of plaintiffs and the traveling public, and are seeking to escape their obligation in that respect. It is further alleged that while under the premises, such conditions constitute a public nuisance, the county court, although requested by plaintiffs, has failed to take any action to require the defendants to abate such nuisance.

It is further alleged in the petition that the continuing obstruction constitutes a private nuisance to the plaintiffs whereby they suffer and continue to suffer irreparable injury, damage and inconvenience with the general public, in addition to special and peculiar injury different in kind and degree from such suffered by the general public. The petition states that plaintiffs George New and Virgie Tolen have been for many years and are the owners of land north of the intersection, and of tracts south thereof, and that the conditions described have deprived them of the beneficial use of their lands since they have been deprived of a roadway between their holdings on either side of the Ditch in the course of farming said lands; "That the nearest means of travel between said points is now between 10 and 14 miles to gain access to a bridge across said Main Ditch, whereas the distance was 1 to 2 miles on the road now obstructed by said Drainage Ditch".

It is alleged that plaintiff Bashford lives on the north side of the Ditch and has leased farm property for the past 17 years south of the Ditch, and that the conditions described have destroyed the beneficial use of his leasehold, and the distance now required to cross the Ditch renders the operation of his farm lands unprofitable. The petition states that plaintiff Tomlinson owns land north of the intersection and has a leasehold of 180 acres south thereof, and the condi-

tions at the intersection injured the beneficial use of his lands. Elmer Snider, it is alleged, owns land south of the intersection, has lived there many years, and has been cut off from his market in the community immediately north of the intersection, and that his mail route from Lock Springs, Missouri, which always crossed the bridge and went immediately past his land, has been discontinued; that the sale or rental value of his land has been greatly reduced due to the fact that children of prospective purchasers could not gain access to the school of the local school district from across the Ditch without a bridge. It is alleged that plaintiff Overton, for many years has operated and still operates a trading post immediately north of the intersection and that approximately half of his trading area lies on the south side of the Drainage Ditch, and has practically been cut off by the conditions at the bridge site.

Plaintiff School District No. 2, it is pleaded, comprises land on both sides of the Drainage Ditch and the school is located on the north side of the same, and approximately one-fourth of the district is south of the Ditch; that due to the conditions the District is unable to provide school facilities for lands south of the Ditch, and that there are no means of transportation for the children to attend the school north of the Ditch.

The plaintiffs allege that because of the premises they have no adequate remedy at law, and they pray for a decree directing the defendants, their agents and employees and contractors, at the expense of the defendant District, to build, repair and fix the bridge and approaches thereto and its embankment within a reasonable time, sufficient for the plaintiffs and the public to travel across said Drainage Ditch, and that the defendants be enjoined from obstructing said public road at the intersection, and for general relief.

The first ground of the motion is that the petition fails to state a claim against any of the defendant supervisors upon which relief can be granted to the plaintiffs, or any of them. Respondents also contend• that the Drainage District is a necessary party defendant; that it has not been served with summons, and for that reason is not a party to the cause. The petition seeks a decree compelling the District and the other defendants to have the repairs to the bridge made ''at the expense of the defendant Drainage District''. The District is, therefore, a proper and necessary party. 32 C. J. p. 298, Sec. 480 (c). But the District is named in the petition as a party defendant and is joined in pertinent allegations thereof. The motion attacks the sufficiency of the petition on its face, and the ruling purports to dispose of the cause as to all defendants. We must treat the District as a party defendant in consideration of the motion to dismiss the cause, and the ruling thereon.

For the purposes of this motion to dismiss, all the proper allegations of facts in the petition must be accepted as true, and must be

construed broadly and most favorably to the plaintiffs. Martin v. Potashnick, 217 S. W. 2d 379. The appellants base their claims of defendants' liability for the maintenance of the bridge on Chapter 79, Article 1, R. S. Mo., 1939, having to do with Drainage Districts. They rely specifically on Section 12354 thereof pertaining to bridges. Under that section and the decisions construing it the petition here sufficiently alleges facts to show the liability of the District for the maintenance of the bridge in question. State ex rel. Ashby v. Medicine Creek Drainage District, 284 Mo. 646, 224 S. W. 345; State ex rel. Chamberlin v. Drainage District, 311 Mo. 309, 278 S. W. 388; State ex rel. Walker v. Big Medicine Drainage District, 355 Mo. 412, 196 S. W. 2d 254.

The plaintiffs allege acts which no doubt constitute a public nuisance. They aver that the county authorities have been requested to take action, without avail. They contend and allege further that the facts constitute injuries to the plaintiffs which are special and peculiar to them and of a different kind and character from those suffered by the general public, whereby they have a right to bring a private action for relief. Respondents argue that only a public nuisance, if any, is shown by the petition; that an action for relief therefrom can be brought only by a representative of the state, and not by an individual; that the alleged injuries differ only in degree from those of the general public; that no peculiar or special injury to property by an obstruction in the highway is shown where the property does not abut on the obstructed part of the highway.

It is the rule in this state that no private individual can maintain an action to abate a nuisance which is public only. Rude v. St. Louis, 93 Mo. 408; Cummings Realty & Inv. Co. v. Deere & Co., 208 Mo. 66, 106 S. W. 496; Christy v. C. B. & Q. R. Co., 212 So. W. 2d 476. The fact, however, that the nuisance is a public one, does not deprive an individual of the right to maintain a suit to abate it if he suffers thereby a special injury not common to the community in general. Givens v. Van Studdiford, 86 Mo. 149, 158. It is also the general rule in this state that for a property owner to sustain a special injury by the vacation of a street, his property must abut on some portion of the vacated part. Arcadia Realty Co. v. City of St. Louis, 326 Mo. 273, 30 S. W. 2d 995; Christy v. C. B. & Q. R. Co., supra. But the same authorities recognize that "There may be other instances where property does not abut upon the obstructed part of the street, yet, the obstruction might deprive the property owner of reasonable access to it". Christy v. C. B. & Q. R. Co., supra, pp. 479, 480; Rude v. St. Louis, supra. An exception to the general rule also exists when the obstruction deprives the property owner of a reasonable access to the general system of streets. Arcadia Realty Co. v. City of St. Louis, supra, 280.

Plaintiffs New and Tolen are engaged in farming land, part of which is south of and part north of the bridge, and since the collapse of the bridge over the ''Main Ditch'' where it crosses the road used by those plaintiffs to and from their two parts of their farms, they are required to travel fourteen miles to a bridge from whence they can there reach their tracts south of the bridge site, as against a distance of one or two miles when the bridge was in place. Plaintiff Bashford, living on one side of the ditch and farming a tract on the other, has lost much of the beneficial use of his land lease to the extent that it is unprofitable to continue operation. Likewise is the situation of plaintiff Tomlinson. Plaintiff Snider, living south of the intersection, alleges that his market in the community immediately north of said point of intersection has been lost to him, his mail service by way of the bridge and directly to his land, has been discontinued, and the access from his land to the district school has been destroyed because there is no longer any bridge over the ''Main Ditch''. Plaintiff Overton operates a trading post immediately north of the bridge and half of his trade has been lost by the conditions at the bridge site. Plaintiff School District complains that its district is located on both the north and south sides of the bridge site and since the bridge is no longer in place there is no means of transportation for children to the school located north of the bridge, and the school district is unable to provide school facilities south of the bridge.

We think a distinction is inescapable between an incidental inconvenience suffered by the traveling public over a highway when an obstruction prevents its use at a given point on the one hand, and on the other hand, the continuing detriment imposed upon the farmer in the operation of his land, whose access to the different parts of his farm has thus been rendered no longer available except by an additional ten or twelve miles over other roads, conceivably rendering such operation unprofitable, or the damage to the man whose general store is so situated that one-half of his established trade is effectually barred from his doors because of the nearby road obstruction, or the loss of a farmer's market in the immediate vicinity of his farm and the road obstruction, or the injury to saleable land from which access to the neighboring school has been cut off, or other constant interference with the occupation or operation of premises on which a livelihood is pursued, business is conducted, or residence enjoyed. Such injuries are not merely of the same kind in varying degrees as those suffered by the general traveling public, but are special and peculiar, not common to the general public. In Heer v. Railway, 41 Mo. App. 63, where the plaintiff's store was adjacent to but did not abut the proposed obstruction, the court said, page 77: ''We assume the rule to be that an obstruction of such a nature as to turn the tide of travel away from the door of a building, so much as to injure the plaintiff's trade, if a tenant, or his rents, if a landlord, would be such

an obstruction of the highway as, if otherwise unlawful, would be enjoined in equity''. The general rule is that: ''Interference with an existing business is generally regarded as a special injury, as where an obstruction entirely prevents one from carrying on a business previously established, materially interferes with the access of customers to his store or other business establishment, interferes with or interrupts travel in front of his place of business, or diverts it to the other side of the street''. 25 Am. Jur., Highways, p. 614.

In Glaessner v. The Anheuser-Busch Brewing Co., 100 Mo. 508, 13 S. W. 707, the private switch tracks of the defendant as proposed would cross a public street and would create a public nuisance, but would also divert travel west from the plaintiff's place of business 75 feet distant from the crossing. The plaintiff, individual owner of the place of business, sued to enjoin the construction and maintenance of the tracks. The court said at page 516, speaking through Black, J.:

''The city having no rightful authority to enact the ordinance, the switch tracks constructed thereunder on the public highway would be a public nuisance; and in order for the plaintiff to maintain this injunction he must show some special injury over and above the general injury to the public. Some of the evidence offered by the defendant is that the construction of the switch will not decrease the value of the plaintiff's property. On the other hand it alleged and showed that plaintiff's property is within seventy-five feet of the proposed crossing, and the weight of the evidence is that these proposed crossings will have the effect to divert the travel to streets west of the brewery, and thereby decrease the value of the plaintiff's property, and take away some of the trade which he at this time enjoys. The evidence satisfied the trial court and it satisfies us that plaintiff will suffer an injury which entitles him to maintain this suit''.

Respondents herein did not challenge plaintiff's petition below as not sufficiently definite and certain. The petition alleges conclusions, it is true, but they can reasonably be inferred from other facts pleaded, which we must consider as uncontroverted. If certain of the allegations do not state a cause of action ''this would not justify the court in sustaining a demurrer to the petition'', if ''there are sufficient other facts stated in the petition to constitute a cause of action against the defendant''. Nye v. U. S. Fidelity & Guaranty Co., 225 Mo. App. 593, 598, 37 S. W. 2d 988. In Harmon v. St. Louis, 137 Mo. 494, loc. cit. 502, 38 S. W. 1102, the petition alleged that the erection of a frame building contiguous to plaintiff's dwelling house, contrary to ordinance, caused his house to become tenantless and undesirable as a residence and to decrease in value. Concerning a demurrer to the petition, the court, on page 502, said:

''For the sake of the consideration of the demurrer filed herein, it stood as admitted that such was the character of the building

erected by defendants, such its effect upon plaintiff's property and such the character of plaintiff's damages as set out in the petition. While the plaintiff in alleging that the building as constructed and maintained was a public nuisance, etc., and also in alleging that his dwelling house had been made tenantless by reason thereof, was stating in both instances a conclusion to be drawn from facts that should more properly have been set out in the petition, the statements were unchallenged as made, and as such in the treatment of defendant's demurrer we must consider them, and, so treating and considering them, we are not of the opinion that, with the allegations of the petition all admitted as true, no right of plaintiff has been violated by the individual defendants herein; that as the fire limit ordinance, mentioned in plaintiff's petition, prohibiting the erection and maintenance of frame or wooden structures of the dimensions of the one constructed by defendants on their premises, was for the benefit of plaintiff and all others in the fire limit districts, he has his remedy for the wrong done that is peculiar to himself, by anyone violating the ordinance''.

Considering this general challenge of the legal sufficiency of the petition, and construing the petition broadly and most favorably to the plaintiffs, as we must, we cannot say that the petition fails to state any cause of action at all. Nor do we believe it was necessary that the action be brought by a public official. The court had jurisdiction of the subject matter of the petition, as filed. Subsequent proceedings will determine if the court has acquired jurisdiction over all the necessary parties in order to grant the relief prayed.

The judgment of the court is reversed and the cause remanded. *Bland, J.* concurs; *Cave, P. J.,* not sitting.