R. F. HOLLOWAY et al., Board of Commissioners, To the Use of Willow Springs Special Road District et al., Appellants, v. HOWELL COUNTY.

Division One, February 29, 1912.

1. ACCOUNTING: When Right Exists. In no way can an account exist or a right to an accounting spring except the relation of debtor and creditor exist between plaintiff and de-

fendant by contract, express or implied, or some obligation to pay arises out of some fiduciary relation between the two.

2. **SPECIAL ROAD DISTRICT: County Revenue: Application for.** A special road district cannot, in after years, recover from the county its share of the county revenue to which, under the statute, it was, within some previous year, upon timely application, entitled.

3. ————: ————: ————: **Necessary.** Under Sec. 10594, R. S. 1909, requiring the county court, in counties wherein special road districts have been organized and money has been collected as county taxes upon property therein, "as such taxes are collected and as the board of commissioners of such special road district shall make application to such county court," to draw warrants for the district's proportionate share of such taxes, the application by the commissioners is a condition to the district getting any of the fund. Without the application the court is not required to draw a warrant in' favor of the district; and if the year has been permitted to go by without such application, the district cannot in a subsequent year recover the amount it might then have had.

4. ————: ————: ————: **Unused Funds.** Because a special road district, which made no application therefor, did not get its proportionate share of the county revenue during a previous year, it does not follow that its share is still in the county treasury when it sues for the same. Even if there was "county revenue" left in the treasury at the end of the year after the payment of the indebtedness and expenses of that year, the county court had the right under the law to transfer the unused part to other proper funds and use it for county purposes for' ensuing years or existing deficits.

5. ————: ————: ————: **Cash System.** The theory of our system of county government is that counties must run their business affairs on a cash system; and it would throw that system into endless confusion to permit a special road district, long after events it apparently acquiesced in by not applying for its share of the county revenue, to hark back to past years and recover judgments for alleged past deficiencies, which, under the cash system, presumably the county has no present ability to pay.

Appeal from Howell Circuit Court.—*Hon. Henry D. Green*, Special Judge.

AFFIRMED.

*N. B. Wilkinson* and *W. P. Campbell* for appellants.

(1) The action is for an accounting to determine the amount of money withheld by the county which belongs to the special road district; not a mandamus to compel immediate payment. Therefore it is not a defense that there will not be a surplus of revenue for 1908 with which to pay the judgment; nor is the fact as alleged in the answer that the county has spent the money in payment of its current expenses. Vaughn v. Appleby, 136 Mo. 408; State ex rel. v. Johnson, 162 Mo. 261. (2) Under the proviso at the close of section 9618 the road district is entitled to at least one-fifth of the taxes collected from property within the district under the levies for county purposes for the years 1903 and 1906; and one-fourth for the years 1904 and 1905, the sum sued for. R. S. 1899, sec. 9618-9619. (3) Under the act in question the county court does not levy a road tax on the property within the road district, but levies a tax upon all property within the county for county purposes, and appropriates a portion of the revenue so derived to the road district as a road fund. Within certain limits as to the amount to be appropriated, the county court is invested with discretion, otherwise its functions are ministerial. (4) The provisions of the statute regulating the proceedings; the methods; and the duties of the officials through whom the purpose of the Legislature is accomplished, are directory; so that the laches of the county court and road commissioners cannot deprive the public of the benefit of this road fund. Parks v. State, 1 Mo. 185; Marion County v. Moffett, 15 Mo. 604. (5) For the misappropriation by the county court of the road fund of the special road district, the county is liable to an action. It is immaterial whether this is treated as a suit in equity to declare and enforce a trust, or at law on a running account for money had

and received. Strough v. Jefferson County, 119 N. Y. 212; Bridges v. Sullivan County, 92 N. Y. 570; Rush County v. State, 103 Ind. 497; Potter County v. Oswego Township, 47 Pa. St. 162; Port Richmond v. Richmond County, 11 App. Div. (N. Y.) 217; Spidell v. Johnson, 128 Ind. 235; Rush County v. Trees, 12 Ind. App. 478; White Sulphur Springs v. Pierce, 21 Mont. 430; Oneida v. Madison County, 136 N. Y. 269; Soderberg v. King Co., 15 Wash. 194; Pimental v. San Francisco, 21 Cal. 352; Bayne v. United States, 93 U. S. 642; Attorney-General v. Perry, 2 Comyn, 481; 11 Cyc. 517. (6) Where money is paid into the county treasury without right or consideration, and which it would be inequitable for the county to retain, assumpsit may be maintained against it to recover such moneys. Soderberg v. King Co., 15 Wash. 194; Pimental v. San Francisco, 21 Cal. 352; Bayne v. United States, 93 U. S. 642; Attorney-General v. Perry, 2 Comyn, 481.

*O. F. Wayland* and *J. L. Van Wormer* for respondent.

(1) The plaintiffs have failed to follow the plain requirements of the section of the statute under which they claim the right to recover, which section requires them to first make application to the county court by the board of commissioners of such special road district; no proof of which was ever offered by them. R. S. 1899, sec. 9618. (2) Plaintiffs have mistaken their remedy; they should first have made application for, and presented their claim for allowance, and on rejection of same have appealed to the circuit court, or instituted mandamus proceedings to compel the county court to appropriate funds, allow their claim and draw warrants on some. R. S. 1899, secs. 1798, 1799, 9287. (3) The tax levy of Howell county for the years 1904, 1905 and 1906 having been only forty cents on the one hundred dollars valuation plaintiffs might have had a remedy for enforcing their claim under the provisions

of Sec. 9274, R. S. 1899, if they had taken the proper steps in the year 1906 and had a special tax levied and collected for the payment of this indebtedness, if any, claimed to be due the Willow Springs Special Road District, but failing to do so they are now without any remedy. State ex rel. v. Railroad, 169 Mo. 563. (4) For county purposes the annual rate of taxation on property in counties having six million dollars, or less, shall not, in the aggregate, exceed fifty cents on the hundred dollars valuation. The valuation of property in Howell county is now, and was at all times stated in plaintiffs' petition less than six million dollars, and having gone to the extreme constitutional limit and levied a tax of fifty cents on the hundred dollars valuation in Howell county for the years 1907 and 1908, and all the revenue derived from said levy and all other sources being required and used to pay the ordinary necessary expenses of the county for the current year 1908, the Willow Springs Special Road District was not entitled to, and could not receive anything from the county treasury. Sec. 11, art. 10, Constitution; R. S. 1899, sec. 9282. (5) No county, city, town, township, school district or other political corporation or subdivision of the State, shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose. To have been entitled to recover in this case, it would have been necessary for plaintiffs to have alleged and proven that there would be a surplus in the years 1903, 1904, 1905 and 1906, and the current year 1908, after paying all the current expenses of each of said years. Sec. 12, art. 10, Constitution; State ex rel. v. Payne, 151 Mo. 663; Railroad v. Thornton, 152 Mo. 570; Book v. Earl, 87 Mo. 246; Andrew Co. ex rel. v. Schell, 135 Mo. 31. (6) The burden of proof is not on the county to show that the revenue appro-

priated for the payment of current county expenses was not exhausted. Plaintiffs must allege and prove this fact. Bank v. Douglas Co., 146 Mo. 43. (7) It is doubtful if funds appropriated for special road districts come under the second subdivision of said Sec. 9283 (and therefore constitute a part of the necessary ordinary county expenses), as this provision of the statute refers to the general county road fund, and not a special road district, or a small subdivision of the county. State ex rel. v. County Court, 142 Mo. 575. But even if so construed, it would not help plaintiffs in this case, for the reasons mentioned in the next two points. (8) The amount claimed by plaintiffs to be owing from Howell county to said Willow Springs Special Road District, if any, is all past indebtedness, being for the years 1903, 1904, 1905 and 1906, and being for past indebtedness, could only be paid out of any surplus remaining in the county treasury after first paying the necessary expenses of the municipal government for the year 1908 and having failed to show that fact, plaintiffs were not entitled to recover. Sec. 12, art. 10, Constitution; R. S. 1899; sec. 6771; State ex rel. v. Railroad, 169 Mo. 563; Andrew Co. ex rel. v. Schell, 135 Mo. 31. (9) This past indebtedness, claimed by said special road district, even if held to be valid, cannot be paid from the revenue provided for current county expenses, until all warrants drawn for expenses of the year 1908, for which taxes were levied, have been paid, and having failed to show any excess of receipts over expenditures for the year 1908, plaintiff cannot recover. Andrew Co. ex rel. v. Schell, 135 Mo. 31; State ex rel. v. Railroad, 169 Mo. 574; Anderson v. Ripley County, 181 Mo. 46; Bernard & Co. v. Knox Co., 105 Mo. 382.

LAMM, J.—Suit in equity for an accounting "and for all equitable relief which the facts of the case warrant."

Brought in the Howell Circuit Court in 1908, the regular judge disqualified himself, and Henry D. Green, Esq., of the Howell bar, was selected as special judge. Qualifying, he tried the case. From a decree for defendant, plaintiffs appeal.

According to the proof the individuals in part composing the aggregation of plaintiffs bear the official relations to the Willow Springs special road district indicated in the title of the cause and alleged in the bill. It appears, also, that the real plaintiff, the Willow Springs special road district (for convenience, hereinafter called the "district"), is a special road district six miles square, including Willow Springs, a city of the fourth class, which district was organized in March, 1903, under the Act of March 9, 1895, Laws 1895, p. 253 et seq.

That act was carried forward as article 10, chapter 151, Revised Statutes 1899, and is again carried forward with amendments made in 1903 (Laws 1903, p. 260-1) and in 1909 (Laws 1909, p. 765) and in 1907 (Laws 1907, p. 414) into Revised Statutes 1909, as article 4 of chapter 102. It was further amended in 1911. [Laws 1911, p. 370 et seq.]

The original act apparently gave the commissioners of the district the same power to contract given road overseers. There is, however, by design or inadvertence a remarkable omission, viz., in the act not making the district a body corporate or giving it a name or any power to sue or be sued. Its corporate name, body and power to sue and be sued were first given by legislative grant in the Laws of 1909, p. 765. No point is made on such legislative lack of power, and we pass the matter by without inquiring into the legal significance of such omission.

The object of this suit is to have an accounting in equity against the county for an alleged share of the taxes levied and collected by Howell county as "county revenue" in the years 1903, 1904, 1905, and 1906. That

is, the suit travels on the theory the relation of debtor and creditor existed between the county and the district by contract, express or implied, or that the obligation to pay arose out of some fiduciary relation between the two. In no other way could an "account" exist, or the right to an "accounting" spring. The allegation of the bill is that there is "due" the district for 1903, the sum of $389.82; for 1904, the sum of $389.-82; for 1905, the sum of $427.68; for 1906, the sum of $451.50; for which total, with interest, judgment is asked. The proof is of such sort that if any recovery is proper, the total of those sums is the measure of recovery.

It is alleged in the bill that in 1903, the county court of Howell county levied fifty cents to the one hundred dollars of valuation on all property subject to taxation in the district "for county revenue" for the current year; in 1904, forty cents; in 1905, forty cents; in 1906, fifty cents. The proof, as we gather, is that these levies were on property in the whole county, including of course the district in question. The district got no part of those levies and on that fact the right to relief is predicated.

In addition to the fifty cents' levy above in 1903, the county court levied a tax on all property in the county of ten cents on the one hundred dollars valuation for "road purposes;" in 1904 in addition to the forty cents' levy above it levied on property *in the district* outside of the city of Willow Springs twenty cents "as a road tax;" in 1905 in addition to the forty cents' levy above it levied on such property in the district twenty cents "as a road tax;" and in 1906 in addition to the fifty cents' levy above it levied twenty cents for road purposes.

While the record is not quite clear yet the case seems to have proceeded below on the theory that the district got whatever taxes were collected under these special levies, and its share of the general ten cents'

road levy in 1903. On the maxim that public officers are presumed to do their duty (absent countervailing testimony) the case may proceed here on the theory the district got its share of all such taxes collected and put in defendant's treasury.

In this connection it appears that Howell county has less than six million inhabitants. On the theory (a sound one) that road taxes, in the years in hand, are but part and parcel of the taxes for "county revenue" or for "county purposes" (R. S. 1899, sec. 9283; now Sec. 11423, R. S. 1909; *Ibid,* sec. 10595, *infra*), it is suggested by plaintiffs' counsel that all these road levies were void as being in excess of fifty cents on the one hundred dollars' valuation allowed for counties of that size. [Const., art. 10, sec. 11.] Whether the road tax levies were partly or wholly void as excessive, or for other reason, or whether the infirmity was in the levies for county purposes, we need not inquire. There is nothing in the pleadings or proofs to show that such issue was sprung or threshed out below, nor anything in the record to show that the road levies were not in fact collected by the county and then paid to and used by the district. Under such circumstances it is not apparent how the alleged illegality of these special road levies affects the merits a whit, or why we should go into that question at all.

We pause long enough to remark there is a precept that every man is presumed to know the law. But should not that precept be amended so as to read, every man is presumed to know the law, *except the road law?* Certain it is that in some of its features it is a tangled skein of incongruities and ambiguities, if not absurdities. Some of its provisions overlap, they do not make a neat joint with cognate sections and the law needs scientific revision. It would be a bold court that did not approach the road laws of Missouri with a questioning eye and a modest degree of doubt. Doubt-

less the county court, in the light it had, thought it was tracking the law and dealing fairly by the district in making those special levies, which if taken as separate from the levies for county revenue, overleaped constitutional barriers.

There are two sections of the statutes bearing directly on the subject-matter of this suit, viz.: Sections 10594 and 10595, Revised Statutes 1909; both brought forward from the original act of 1895.

Section 10594 reads: ''In all counties wherein special road districts may be organized under this article, where money shall be collected as county taxes upon property within such special road district, or as dramshop, pool or billiard table licenses on business within such special road district, the county court shall, as such taxes or licenses are collected, and as the board of commissioners of such special road district shall make application to such county court, draw warrants upon the county treasurer, payable to the treasurer of such board of commissioners, or to such other persons as the board may from time to time designate, for an amount bearing such proportion to the entire amounts of the year's taxes so collected upon said property as the amounts annually appropriated or expended for road and bridge purposes shall bear to the total county revenue for such year, and also to an amount equal to one-half of all the dramshop, pool or billiard table licenses collected by the county as county licenses from such businesses carried on within the limits of such special road district; and all such sums so paid out shall be expended upon the roads under the charge and control of such board of commissioners, as in this article provided: *Provided,* that the amount of the taxes collected by the county on the property within such special road district, and thus applied to the improvement of the roads, shall not be less than ten cents nor more than twenty cents on a hundred dollars of assessed val-

uation of the property within such special road district.''

Section 10595, reads: ''The county courts of the counties wherein all or part of such road district may be situated, at the term when other taxes are levied, shall levy upon every male inhabitant in said district and without the limits of an incorporated town or city, over twenty-one and under sixty years of age, a poll tax of two dollars and fifty cents, and upon all real and personal property in said district, taxable for state purposes, a tax of not less than ten nor more than twenty cents on the hundred dollars' valuation, which shall be a part of the tax which may be levied for county purposes; which levy of taxes shall be collected as state and other county taxes are collected.''

(*Nota bene*: If there were any pool, billiard or dramshop businesses carried on in Willow Springs and licenses granted by Howell county therefor in 1903-4-5 or 6, the district does not complain of not getting its ratable share of such licenses.)

It will be observed that by the body of section 10594, supra, the amount to be drawn by the district must bear such proportion to the amount collected as the amounts annually appropriated or expended for road and bridge purposes bear to the total county revenue of such year. That phraseology connects itself with other cognate sections (for instance, with Sec. 11423, R. S. 1909, and Sec. 9436, R. S. 1899). Those sections allow a discretion to the county court possibly wider than section 10595, supra, or the proviso in section 10594, supra. But the case at bar does not call for an exposition of the statutes in that regard.

It is not alleged in the bill nor does the proof show that the board of commissioners of the district contracted for labor, material or implements with the view to sharing in the ''county revenue'' for any of the years in question, or that any contractor for labor, material or road tools holds any claim against the dis-

trict for those years. If contracts were outstanding or district debts existed for those years we might have a different case to deal with.

Closer home and more to the point, it is not alleged in the bill or shown by the proof that the board of commissioners of the district made *application* to the county court in any of those years for a share of the county revenue raised by the tax levies in question.

Observe, section 10594, supra, only required the county court to draw warrants upon its treasurer "as the board of commissioners of such special road district shall make application to such county court." Such application is made a condition to getting any of the funds. Why was that condition made by the lawmaker? The reasons are manifest. The district might not need the money. So, the county court, charged with the duty of distributing the county revenue and keeping the county on a cash basis, might stand informed by such application of the need and demand and thereby take care to close up the year's business on such basis by adjusting its general expenditures accordingly.

If such application had been made in this case and refused, we do not say the district could have sued in equity as here, but we do say it might have had a timely legal remedy by mandamus or otherwise.

The bill alleges that the share of the district is still in the county treasury, but the proof shows nothing of the sort. Whatever mere theory be indulged by way of inference, one way or the other, the actual fact is, as shown by the proof, the money levied for county purposes was used for county purposes, presumably for paupers, insane persons, the salaries of officials, the expenses of running the courts, jury fees, expenses of elections, criminal costs and roads and bridges elsewhere. [*Vide,* R. S. 1909, sec. 11423.] It is not clear there was any "county revenue" left at the end of any year after paying the indebtedness and

obligations of the county for the current year. But if there was, then under certain statutory conditions, the county court had the right to transfer it to other proper funds and use it for county purposes for ensuing years or existing deficits, if any, after all contracts entered into with reference to the current year creating present indebtedness had been complied with and all outstanding current county obligations had been satisfied. [State ex rel. v. Johnson, 162 Mo. 621; State ex rel. v. Appleby, 136 Mo. 408; Decker v. Diemer, 229 Mo. 296.]

This view of the law but establishes a sensible and practical working plan for transacting the business affairs of the county. In the Decker case the legality of a court house fund made up in part of the odds and ends of unused funds was sustained. There is in that case an extensive discussion of the statutes relating to the administrative details in handling county funds. We will not repeat what is there said.

The theory of our present system of county government is that counties must run their business affairs on the "cash system." [Decker v. Diemer, supra, l. c. 330.] Running in debt is easy and pleasant while it lasts. Paying is "another story." The pleasure of debt making is denied by law to Missouri counties; they can anticipate their revenue, but only for the current year. [State ex rel. v. Railroad, 169 Mo. l. c. 574-5.] The road fund claimed in this case, as said, was levied as county revenue. It was county revenue; any part of it not called for, for current year purposes, became, under the facts of this case, an unexpended and unused part of the county revenue, subject to be disposed of as indicated in the Decker, Johnson and Appleby cases, supra. As near as we can make out it was so used. It would throw into needless confusion the whole cash scheme of county government to permit a special road district long after events it apparently acquiesced in to hark back to past years and

recover judgment against a county for alleged past deficiencies, which, under the cash system, presumably the county has no present ability to pay. Especially so where no timely and statutory application was made for the fund as here. Something is made of the fact that in September, 1908 (at the time of the trial), there were several thousand dollars in the county treasury to the credit of the county revenue fund. We see no logical connection between that fact and defendant's liability.

We are cited to many interesting cases in other States, of which The Village of Oneida v. Madison County, 136 N. Y. 269, and Spidell v. Johnson, 128 Ind. 235, are samples. There actions for money had and received were allowed against counties that had used funds collected for a specific purpose and belonging to other public corporate bodies to pay their debts. But the facts in those cases are dissimilar to those here in obvious particulars, and we are not familiar with the statutes of those States which may have lent color to those decisions.

There are other questions raised we deem immaterial.

Let the judgment be affirmed. All concur.