THE STATE ex rel CAMERON SPECIAL ROAD DISTRICT v. BERRY EVERETT et al., Judges of County Court.

In Banc, November 14, 1912.

1. SPECIAL ROAD DISTRICTS: Distribution of Fund. Section 10594, R. S. 1909, enacted in 1895, does not control the distribution of the special road and bridge taxes authorized by the constitutional amendment of 1908 (Sec. 22, Art. 10, Constitution).

2. ———: ———: Sec. 10482. The General Assembly by Sec. 10482, R. S. 1909, enacted to put in force the constitutional amendment of 1908, intended to leave the special road and bridge taxes authorized by and collected under said amendment, under the control of the county court, to pay for constructing and repairing bridges, and for grading, draining, surfacing with stone, gravel or other materials authorized by sections 10486, 10490, 10564 and 10566. Under section 10482 the county court, in its discretion, may turn over to the officers of the special road district the taxes collected from property therein, to be used in constructing roads and bridges, but it is not compelled to do that, but may itself use the money so collected to construct roads and bridges wherever needed in the county.

3. ———: ———: Mandamus. A special road district cannot maintain mandamus against the county court in a county not under township organization to compel said court to turn over to said district the special road and bridge taxes levied and

collected upon property within said special road district. The county court, under the statutes, has a discretion in the matter, as to whether it will use the taxes so collected in building bridges and constructing roads, or turn them over to the officers of the road district, and where such discretion exists it will not be interfered with by mandamus.

## Mandamus.

WRIT DENIED.

*William Henry* and *A. J. Althouse* for relator.

(1)   Mandamus is the proper and only proceeding to compel the county court to issue the warrant called for in this case. State ex rel. v. Baker, 166 Mo. 130.   (2)   The amount due and payable to the Cameron Special Road District must be determined by the provisions of Sec. 10594, R. S. 1909, which contemplates that the amount shall be obtained by finding, first, the total amount of money collected as county taxes upon property in such district; second, the total amount appropriated or expended for road and bridge purposes, annually, that is, appropriated for the whole year in the county; third, the total county revenue for the year.   Then the proportion which the second sum bears to the third is the portion of the first that must be paid to the commissioners on warrants of the county court.   The county revenue is all the revenue except the state tax, school tax, and municipal or city tax.   And this rule of proportion will apply even though part of the money arises from a tax authorized by later enacted law, constitutional or statutory.   (3)   When constitutional provisions are sufficiently self-enforcing to authorize action or confer rights or power, all such rights, power or action must be exercised under its terms, and, when and so far as occasion may require, under the existing laws which are applicable.   Cummings v. Spaunhorst, 5 Mo. App. 21.   (4)   All sovereign power is primarily in

the people, and there is no power to limit the extent to which they may go in the matter of legislation in ordaining the Constitution of the State. Cummings v. Spaunhorst, 5 Mo. App. 25. And since the Constitution is the supreme law, an amendment thereof must of necessity by implication, set at naught all prior inconsistent provisions, constitutional and statutory, leaving in force all existing law not inconsistent. (5) The effect of Sec. 22, Art. 10, of the Constitution, adopted in 1908, was to raise the maximum limit to which the proper local and county authorities may go in the exercise of the power of levying and collecting taxes for road and bridge purposes, all statutory restrictions being removed to the extent of its provisions. And the matter is cleared of all constitutional objections, provided all amounts levied on property for road and bridge purposes, together with the other county tax, do not exceed 65 cents on the $100 valuation. Constitution, Art. 10, Sec. 11. (6) Sec. 10594, R. S. 1909, must have full force, and in calculations under it no money arising from any tax on property in the special road district, even though collected by virtue of authority of Sec. 22, Art. 10 of the Constitution, can be excluded; and as to the legislative intent, see: State ex rel. v. Railroad, 101 Mo. 120; State ex rel. v. Apply, 136 Mo. 408; Elting v. Hickman, 172 Mo. 237; R. S. 1909, Secs. 10481, 11767, 11769, 10595, 10594, 10585, 11528, 10593, 11423, 11528.

*E. W. Hinton* and *McBaine & Clark, Amici Curiae* for relator.

(1) The language of Sec. 10594 that the county court shall draw warrants etc., "for an amount bearing such proportion to the entire amount of the year's taxes so collected upon said property, as the amounts annually appropriated or expended for road and bridge purposes shall bear to the total county revenue

for such year," is clearly sufficient to include all taxes appropriated or expended for road and bridge purposes and therefore prima facie includes the special road and bridge tax in controversy. (2) There is nothing in Art. 10, Sec. 22, of the Constitution, or in the provisions of Sec. 10482, expressly or impliedly excluding the special tax, thereby authorized and created, from the operation of the apportionment to special road districts under Sec. 10594.

*W. S. Herndon* for respondents. *E. C. Anderson* and *W. M. Williams, Amici Curiae.*

(1) The revenue collected under Sec. 22, Art. 10, of the Constitution, is for a special purpose, and is to be expended by the county court. Sec. 10594, under which relator claims, does not affect this special fund, or give it any right to any part thereof. Green City v. Martin, 237 Mo. 474. (2) Sec. 10594, R. S. 1909, under which relator is seeking to force the issue of its warrant does not give it any right to the levy made under Sec. 22, Art. 10, of the Constitution, for several reasons, viz: a. The section itself limits the amount of tax to be paid on property in the special road district to not less than ten nor more than twenty cents on the $100 valuation. b. Said section 22 was not in existence at the time section 10594 was enacted. c. Sec. 22 of said Article 10, and sections 10483, 11769 and 11770, authorizing county courts and township boards to levy the tax provided for by said Sec. 22, make it discretionary with the county court or township board to levy or not levy the tax authorized by the said section. d. The road and bridge tax, provided for by said section of the Constitution and said sections of the statutes, can only be expended by the county court or township board. e. If this special fund or any part thereof, was paid to relator under the power given it by section 10585, it could be used

for renting, leasing or buying teams, implements, tools and machinery, etc., and thus put to a use other than that prescribed by the Constitution and the statutes authorizing its levy.  f.  There is no provision in any statute providing that any part of this special road and bridge fund shall be paid to any road district.  Green City v. Martin, 237 Mo. 474.  (3)  The construction of section 10594, contended for by relator, would give it, not only all the revenue derived from the ten cent levy under section 10481, on all property within its boundaries, but also all the twenty-five cent levy made under sections 10482, 11769 and 11770, on all property within its boundaries.  Then if the entire county were organized in special road districts, not only the entire revenue derived from the ten cent levy under Sec. 11, Art. 10, of the Constitution, but also the entire revenue derived from the twenty-five cent levy made under Sec. 22 of said Art. 10, would be paid to road districts, and not a dollar left in the county treasury to build or repair bridges, which the law requires the county to do.  (4)  Section 10481, first enacted in 1899, practically did away with and repealed that part of section 10594 which provides that the county court shall "draw warrants—for an amount bearing such proportion to the entire amount of the year's taxes so collected upon said property, as the amounts annually appropriated or expended for road and bridge purposes, shall bear to the total county revenue for such year," for the reason, that by following the command of section 10481, all of the "not less than ten nor more than twenty cents levy" mentioned in both sections, goes into the county treasury, and is placed to the credit of the road district, and it thus gets all the road tax paid in its district.  (5) Before the adoption of Sec. 22, Art. 10 of the Constitution, the county court could not have levied ten cents in the ordinary road districts, and twenty in special road districts.  Especially is this true in Clinton

county, where it required thirty cents of the forty, for county revenue, and only left ten for road purposes, but even if it could have done so, the special road districts would have received, under the directions laid down in section 10481, all road taxes collected on property within such district, which is all that it could ask. This the relator received. This harmonizes with the proviso in section 10594, "that the amount of taxes collected by the county on the property within such special road district, and thus applied to the improvement of the roads shall not be less than ten nor more than twenty cents on a $100." (6) Under the provisions of Art. 6, Ch. 102, R. S. 1909, special road districts contained within their limits incorporated towns. Under the allegations of the writ and return Cameron is a part of and in relator, and the levy of ten cents was on all property in that city. Section 10481 provides for a levy of not less than ten and not more than twenty cents, on all property outside of incorporated cities, towns and villages. Whether the provision of section 10481, or the levy by the county court, on all property in Cameron, is void, is immaterial, as relator got the benefit of the levy. In addition to the per centum of all licenses paid to it, it got the taxes from the ten cent levy, on city property, which the ordinary road districts do not get. (7) The Special Road District Act, from which sections 10585, 10591 and 10594 are taken, was passed in 1895. At that time section 10481 was not in existence. The ascertainment of the amount necessary to be raised, the fixing of the tax rate, appropriation and subdivision of the county revenue, at that time, was made under sections 11420 and 11423, and 11582, which then existed as they are now. Section 10481 was first enacted in 1899, and appears in the revision of that year as a new section. It then provided that the levy made should be deducted from the levy made for county purposes, which would be necessary anyway where the levy for county pur-

poses was up to the constitutional limit. (8) The claim made by relator that it has exclusive and entire control over all highways and bridges in its district is not well taken. The statute cited, section 10585, does not mention bridges. And besides under this section it has no more powers than road overseers have under the general statutes. Highways do not include bridges. Green City v. Martin, supra. (9) Sec. 10591, R. S. 1909, requires the county to erect and repair all bridges in special road districts the cost of which exceeds one hundred dollars. Sec. 10486, R. S. 1909, provides that no road district shall be compelled to build any bridges the cost of which is fifty dollars or more. Sec. 10488, makes the same provision as to repairs on bridges where the costs exceed fifty dollars. If the construction of Sec. 10594 contended for by relator is to be followed, then all of the road and bridge tax, the ten cent levy and the twenty-five cent levy, collected on all property within the boundary lines of relator, would be paid back to it, thus relieving it of the burden of paying any part of the cost of erecting any bridge, or repairing any bridge, erected or made by the county. But ordinary road districts would not only not get such share of the tax, but the burden of building such bridges and making such repairs would have to be borne by the taxpayers of such ordinary road districts. Hence, that part of the section relied upon by relator is in violation of subdivision 26, Sec. 53, Art. 4, of the Constitution. (10) A general statute which gives to all road districts, road taxes collected in such district, would undoubtedly include special road districts, hence a special statute giving them a share of the county revenue, is not necessary and subdivision 32, Sec. 53, Art. 4, of the Constitution, which provides that no local or special law shall be enacted when a general law would be applicable is violated by that part of section 10594 providing for payment of part of the moneys appropriated for road

and bridge purposes, to be paid to special road districts.

BROWN, J.—On January 22, 1912, the relator instituted this action of mandamus in this court to compel respondents as judges of the county court of Clinton county to issue a warrant upon the treasurer of said county in favor of relator for the sum of $1000. The object of the action is to determine whether or not the relator as a special road district organized under Art. 6, Ch. 102, R. S. 1909, is entitled to receive from Clinton county the special road and bridge taxes levied and collected upon property within said special road district during the years 1909, 1910 and 1911, pursuant to the provisions of Sec. 22, Art. 10, Constitution of Missouri (adopted in 1908), and Secs. 10482 and 11769, R. S. 1909, enacted to put in force said constitutional provision.

The relator charges that during each of the years 1909, 1910 and 1911, more than $1000 special road and bridge taxes were levied and collected by Clinton county under the provisions of the above mentioned laws on property situated in said special road district; and that during said years relator through its officers made frequent demands upon respondents for the money arising from said special taxes, but that respondents refused to audit relator's claims or to draw warrants in its favor therefor.

In relator's petition the amount levied and collected as general road taxes under Secs. 10481 and 10595, R. S. 1909, is not distinguished from the amount alleged to have been collected as special road and bridge taxes under Secs. 10482 and 11769; however, this action was tried by both parties on the theory that only the special road and bridge taxes were in dispute, and the case will be so treated in this opinion.

In their return, respondents admit that relator is a special road district; admit the levy and collection of the special road and bridge taxes as charged; and further admit that none of said taxes were credited to or received by relator. By way of defense or justification for withholding said taxes from relator, respondents assert that they appropriated and expended all of said special road and bridge taxes so collected in building and repairing roads and bridges in Clinton county, Missouri, and allege that relator's claim to said special road and bridge taxes is "without authority of law, and is not a matter of right."

Relator's reply is in the nature of a demurrer to respondents' return; and prays the issue of a peremptory writ.

Clinton county is not under township organization. The pleadings do not charge that respondents are withholding or refusing to cause warrants to be issued for any other funds which relator, as such special road district, is entitled to receive from Clinton county during said years.

The decision of this case turns upon the proper construction of the amendment to our State Constitution adopted in 1908 (Sec. 22, Art. 10), and Secs. 10482 and 11769, R. S. 1909, intended to put in force the powers conferred upon county courts by said constitutional amendment.

Respondents earnestly insist that Sec. 10594, R. S. 1909, governs and controls the manner in which the special road and bridge taxes collected under the aforesaid constitutional amendment shall be distributed and expended. The cases of Green City v. Martin, 237 Mo. 474, and Holloway v. Howell County, 240 Mo. 601, are cited to support this contention.

The case of Green City v. Martin, supra, construes Sec. 11767, R. S. 1909, and holds that said section was not intended to apply to special road and

bridge taxes authorized by the constitutional amendment of 1908.

The case of Holloway v. Howell County, supra, holds that while a special road district may compel a county court by mandamus to draw warrants in its favor for any moneys due such district from public taxes collected by the county, a suit in equity for an accounting will not lie against the county on behalf of such district after the end of the fiscal year in which such taxes were collected.

Neither of these cases defines how the special road and bridge fund collected under the constitutional amendment of 1908 shall be distributed; and what was said on that point in those cases is only *obiter*.

Sec. 10594, R. S. 1909, directs county courts in counties where special road districts are located, to annually draw warrants in favor of the officers of such special road districts for such proportion of the entire county taxes collected on property in such districts as the amount appropriated and expended for road and bridge purposes in the entire county shall bear to the total revenue of the county.

This is but an indirect way of saying that all the road and bridge taxes collected on property within the special road districts shall be turned over to the officers of such districts. This would necessarily be the result where county courts appropriate and expend annually all taxes which they collect for road and bridge purposes. County courts by general law, sections 11527 and 11528, are forbidden to transfer moneys from a fund for which they are levied and collected to a fund for which they were not collected, except in cases where the purpose for which such fund has been levied and collected no longer exists—a condition not likely to arise in regard to the road funds of Missouri.

After careful consideration of said section 10594, we are convinced that it was never intended to govern the distribution of taxes levied and collected under

Sec. 22, Art. 10, Constitution of Missouri, adopted in 1908. In the first place, said section 10594 was enacted in 1895 (Laws 1895, Sec. 17, page 255), when the General Assembly could not have possessed any specific intent regarding taxes which the Constitution did not then permit to be levied; and, second, the last clause or proviso of said section 10594, supra, expressly prohibits the officers of special road districts from expending annually on public roads a greater amount of taxes than twenty cents on the $100 valuation of property in their respective districts. This was all the property taxes which could have been legally collected for road purposes in such districts at the time section 10594 was enacted. Since the Amendment of the Constitution in 1908, county courts may levy and collect forty-five cents on the $100 valuation of property in special road districts (twenty cents under the general law and twenty-five cents under section 10482, supra); but if we follow the plain letter of section 10594, not more than four-ninths of the taxes thus levied and collected could be expended on the roads within such special districts. Relator's position is that a part of said section 10594, supra, should be followed and the remainder repudiated.

It is obvious that said last named section does not control the distribution of the special road and bridge taxes authorized by the constitutional amendment of 1908.

We must therefore look elsewhere for the legislative intent regarding the distribution of said taxes.

Section 11769, supra, directs how such special taxes under the constitutional amendment of 1908 shall be levied in counties under township organization; but as Clinton county is not under township organization, that section throws no special light on the disposition of the disputed funds.

Sec. 10482, R. S. 1909, enacted to put in force the constitutional amendment of 1908, reads as follows:

"In addition to the levy hereinbefore authorized to be made, the county courts of the several counties of this State, other than those under township organization, may, in their discretion, levy and collect, in the same manner as State and county taxes are collected, a special tax not exceeding twenty-five cents on each one hundred dollars valuation, to be used for road and bridge purposes, but for no other purpose whatever, and the same shall be known and designated as 'the special road and bridge fund' of the county."

This section does not contain any provision which directly forbids county courts from turning over to special road districts a part or all the funds collected on real and personal property in such districts, but it certainly contains no phraseology placing such a duty upon county courts. The last three words of this section imply an intent that the taxes raised under the provisions of that section shall be a *county fund* not under the control of the special road districts.

Some reason for such a legislative intent is found in Sec. 10591, R. S. 1909, which casts upon counties the expense and duty of making and repairing all bridges in special road districts where the cost thereof exceeds $100. Counsel have not called our attention to any other statute which would enable the county courts to raise funds for the purpose of building bridges costing more than $100, and we are not aware of any provision for raising such funds except a certain percentage of the dramshop licenses which may be appropriated for that purpose. [Sec. 7199, R. S. 1909.]

Section 10594, supra, directs that one-half of all moneys collected by counties as licenses on dramshops situated within special road districts shall be paid to such districts. It cannot be successfully contended that this provision for dividing the money derived from dramshop licenses between the county and districts, indicates a legislative design that such districts

shall have all taxes collected within their borders.

If we were to adopt relator's construction of the statute, counties might be required to expend many thousands of dollars in special road districts for the construction of bridges therein (costing more than $100), and at the same time be required to turn over to such districts all moneys collected therein. It will hardly be supposed that the Legislature intended any such result.

In our general scheme for the maintenance of public highways, the expense of constructing safe, durable bridges, and also permanent, level and solid roads, is an important factor.

County courts have been vested with general superintending control over the matter of constructing and repairing bridges. [Secs. 10486 and 10490, R. S. 1909.] Through the highway engineer, they may at the expense of their respective counties let contracts for grading, draining, surfacing with stone, gravel or other materials, the public roads of their respective counties. [Secs. 10564 and 10566, R. S. 1909.]

The making of these permanent improvements calls for money; and county courts can only raise money by taxes and licenses; therefore, it is fair to assume that the General Assembly of 1909 intended to leave the special road and bridge taxes collected under section 10482, supra, under the control of county courts to pay for such improvements.

Some counties probably have all the bridges they need, while others need many bridges, but have none. Whenever a county has all the bridges it needs and also such permanent roads as afford full accommodation for travel, then whatever road and bridge taxes are collected under section 10482, supra, should, according to principles of equity, be expended all over the county wherever needed, without discrimination against any part thereof; and in such cases it would be within the spirit of the law for county courts to

turn over to special road districts any funds collected on property within such districts to be expended by the officers of such districts in keeping in repair the public roads under their control.

In many counties it will no doubt be wise to expend all or a large percentage of the special levy authorized by section 10482, supra, in constructing bridges or permanent roads in one part of the county in one year, and in a subsequent year apply the moneys thus collected in another part of the county, until all its citizens are supplied with good roads and safe bridges.

The *discretion* to expend the special road and bridge fund in the manner which will be most conducive to the general welfare of the inhabitants of the counties has been invested in county courts elected by the people; and it is a well-known rule of law that where judicial officers possess discretion as to how their duty shall be performed, their discretion will not be interfered with by the writ of mandamus. [Miltenberger v. St. Louis County, 50 Mo. 172; Dunklin County v. District Court of Dunklin County, 23 Mo. 449; State ex rel. v. Fort, 180 Mo. 97; State ex rel. v. McKee, 150 Mo. 244.]

There being no law to sustain the issue of a peremptory writ of mandamus as prayed, said writ is denied and the alternative writ quashed.

*Kennish, J.*, concurs; *Valliant, C. J.*, and *Ferriss, Graves, Woodson* and *Lamm, JJ.*, concur in the result.