THE STATE ex rel. G. R. CHAMBERLIN, Prosecuting Attorney, Appellant, v. GRAND RIVER DRAINAGE DISTRICT OF CASS AND BATES COUNTIES.

Division One, December 22, 1925.

1. **DRAINAGE DISTRICT: Whether Organized under Act of 1913 or Prior Acts: Bridges: Immunities: Procedural Benefits.** The original articles for the incorporation of a drainage district were filed in the circuit court in November, 1912; process issued and service was had upon nearly all non-petitioners before the next term in January; at that term, in February, 1913, certain of the non-petitioners took leave to answer, and an *alias* order of publication was made against non-petitioners not previously served, and judgment by default was rendered against those parties who had been served, and the cause was continued to the May term, 1913, and at that term the petition and articles were amended by interlineation. Later, and either in February, 1914, or at the May term, 1914, the incorporators filed their amended petition and articles of association, the names of the petitioners being signed by one of their attorneys, in which they stated they desired to form and organize a drainage district, "as provided by Article I of Chapter 41 of the Revised Statutes of 1909 and amendments thereof enacted in 1911, as the same were amended by the Laws of Missouri enacted in 1913." An order of publication upon the amended petition and articles was made, and publication in newspapers followed, and the notices described all the lands of the district as bounded by the amended articles, and advised all parties interested that "articles of association and amendments thereof, asking that the foregoing lands and other property be formed into a drainage district, under the provisions" of the Drainage District Act of 1913, particularly identifying the act by quoting its title in full. The decree of incorporation, made in October, 1914, was based upon "the terms of said articles of association as amended," set them forth in full, and decreed the district incorporated with the "boundaries as described in said amended articles of association" and "with all the rights, powers and authority given and conferred by and under the laws as provided under Article I, Chapter 41, Revised Statutes 1909, as amended by the Acts of 1913, amending said article." *Held*, that, upon these and other facts set forth in the opinion, the district was organized under and is subject to the provisions of the Act of

1913 (Laws 1913, pp. 232-267; Art. 1, Ch. 28, R. S. 1919), and it cannot be conceded that the purpose of the petitioners, in filing the amended petition and articles, or that the effect of the proceedings thereunder, was simply to avail themselves of the procedural benefits to be had under said Act of 1913, without surrendering the immunities and privileges given under the preceding acts, but whether the drainage district or the county must pay for bridges over drainage ditches intersecting public roads is to be determined by the said Act of 1913, and not by the provisions of the preceding acts.

2. **DRAINAGE DISTRICT: Petition and Articles: Amendment: Names of Petitioners Signed by Attorney.** The paper designated by the statute as "articles of association" is the first pleading in a proceeding to organize a drainage district, and is in effect a petition; and where it is signed by the requisite number of landowners, and is served personally or by publication, the court has acquired jurisdiction, and an "amended petition" to which the names of the petitioners are signed by one of their attorneys may be filed before judgment or decree of incorporation, and such "amended petition" is in effect "amended articles." The amendment being germane to the original articles and their purpose, the signing of them by the attorney for the petitioners was sufficient.

3. ————: ————: ————: ————: **Explanation of Judgment Recitals.** Articles of association for the incorporation of a drainage district, signed by the requisite number of landowners, were filed in the circuit court and service was had personally or by publication, whereby the court acquired complete jurisdiction of the cause, but, without rendering a decree of incorporation, continued the proceeding, and at a subsequent term an "amended petition," setting forth in the form of articles of association all necessary statutory requirements, the names of the petitioners being signed thereto by one of their attorneys, was filed, and an order of publication, based on such amended petition and articles, was made, and publication in newspapers followed, advising all parties interested that "articles of association and amendments thereof, asking that the foregoing lands and other property be formed into a drainage district," had been filed. At a later term the court entered a decree founded upon such amended petition, setting it forth in full, and reciting, among other things, that "the court finds the facts to be that said petition, and amended petition and articles of association filed herein, were and are duly signed by a majority in interest of the owners" and that "the court further finds that the said petition and amended petition, and articles of association were signed by the owners of 11,089 acres of said body, and the non-petitioners own only 7,087 acres of said body." *Held*, that the judgment, by its

recitals, is conclusive that there was an amended petition and amended articles of association, properly signed and filed, and parole testimony in a collateral proceeding is not competent to show that no amended articles were filed, or that the decree was based on the articles first filed.

4. ———: **Notice.** Section 54 of the Act of 1913 (Sec. 4450, R. S. 1919), relating to notice, has reference to the re-organization of an existing drainage district, and does not apply to a district whose organization was begun before the Act of 1913 became a law, but was not completed until after its enactment. The right and remedy of such a district to proceed to an organization under the Act of 1913, and the notice required, are governed by Sections 4438 and 4379, Revised Statutes 1919.

5. ———: **Bridges: Reconstruction: Maintenance.** A drainage district organized under the Circuit Court Drainage District Act of 1913 is not only required to construct, at the time the ditches are dug, bridges over the drainage ditches where they intersect public roads, but is required to repair and maintain them, and to renew and re-construct them whenever their enlargement or renewal is made necessary by the widening of the ditches by the action of the water.

· 6. ———: **Reorganization: Immunity: Statutes.** Sections 52, 57 and 62 of the Act of 1913 (Laws 1913, p. 232; Secs. 4429, 4433 and 4438, R. S. 1919), relating to the re-organization of an existing district organized under the provisions of preceding statutes and providing in Section 57 that "all rights and privileges and immunities enjoyed by the old district under its former organization, shall be held and enjoyed by the new district when the same shall organize under the provisions of this act," have no application to a district whose organization was begun under Revised Statutes 1909, but completed under the Act of 1913. A district whose organization was begun before, but not completed until after, the enactment of the Act of 1913, and then completed and expressly incorporated under said act, was not an existing district when said act became a law, and was not reorganized, but having been projected under the old law was organized under the new law, and immunity from paying the cost of bridges over its ditches where they intersect public roads was not granted to it by said act.

---

Corpus Juris-Cyc. References: **Drains,** 19 C. J., Section 61, p. 645, n. 5; Section 68, p. 647, n. 49; Section 151, p. 680, n. 51; Section 187, p. 696; n. 29.

Appeal from Cass Circuit Court—*Hon. C. A. Calvird,* Judge.

REVERSED AND REMANDED.

*G. R. Chamberlin, A. A. Whitsitt* and *D. C. Chastain* for appellant.

(1) The decree organizing the defendant district under the Act of 1913 is not subject to collateral attack, and the defendant cannot deny the recital of facts therein contained. State ex rel. v. Albany Drainage Dist., 290 Mo. 33; Sullinger v. West, 211 S. W. 65; State ex rel. v. Sheets, 279 Mo. 428; State ex rel. v. Rawls, 226 S. W. 889; State ex rel. v. Taylor, 224 Mo. 461; State ex rel. v. Blair, 245 Mo. 461; State ex rel. v. Young, 255 Mo. 636; State ex rel. v. Bank, 279 Mo. 228; 34 C. J. 517, 902. (2) It will be conclusively presumed that the circuit court found sufficient facts to authorize the entry of the final decree. Cobe v. Ricketts, 111 Mo. App. 113; Cox v. Boyce, 152 Mo. 582; Reed Bros. v. Nicholson, 158 Mo. 624; Holt v. Blair, 105 Mo. 92; Oldaker v. Spiking, 210 S. W. 59; Sullinger v. West, 211 S. W. 65; McIntyre v. Ry. Co., 286 Mo. 234. (3) Nor was the testimony of Judge Glenn to the effect that there was no amended petition and articles of association filed, admissible to contradict the record and though admitted such testimony has no probative value. Nodaway County v. Williams, 199 S. W. 224; Oldaker v. Spiking, 210 S. W. 59. (4) The decree of incorporation finds that amended articles of association properly signed had been filed and the testimony of Judge Glenn who drew the decree was not competent to impeach it in that respect. Cases supra; State ex rel. v. Homer, 249 Mo. 58. (5) But in any event the signing of the amended petition and articles of association by the attorney for the petitioners is sufficient. The statute does not require an individual to sign by his own hand. Sibbet v. Steele, 240 Mo. 85; State ex inf. Talbott v. Drainage Dist., 292 Mo. 696. (6)

The default of February 5, 1913, against part of the landowners, on the original petition, created no rights in favor of the district as against the recitals in the final decree procured by it. Sullinger v. West, 211 S. W. 65. (7) A district organized under the provisions of the 1913 law is required to build the bridges. State ex rel. v. Medicine Creek Drain. Dist., 284 Mo. 636. (8) It is the common-law duty of the drainage district to keep its bridges in repair. State ex rel. Ashby v. Drainage Dist., 284 Mo. 636; Conewango v. Shaw, 52 N. Y. Supp. 327; Highway Commrs. v. Drainage Dist., 246 Ill. 378; State v. Papillion Dist., 132 N. W. 398; Richardson Co. v. Drainage Dist., 139 N. W. 648, Ann. Cas. 1914 A, 550; Woodring v. Forks Township, 70 Am. Dec. 134; State v. Irrigation Co., 65 Pac. 681; Nuckols County v. Guthrie, 76 Neb. 157; Woburn v. Henshaw, 101 Mass. 193; Phoenixville v. Phoenix Iron Co., 45 Pa. St. 135. (9) The obligation of the county prior to the Act of 1913 rests solely upon the express provisions of the statute, which were modified in 1913, and the express burden of building and maintaining bridges was placed upon the districts. State ex rel. v. Drain. Dist., 252 Mo. 345; State ex rel. Ashby v. Medicine Creek Drain. Dist., 248 Mo. 636; Sec. 4406, R. S. 1919; Camden Special Road Dist. v. Willow Drainage Dist., 199 S. W. 716.

*Allen Glenn & Son* and *W. E. Owen* for respondent.

(1) Respondent was never organized under the Act of 1913, but under the Act of 1909, as amended by the Acts of 1911. Hence the burden of construction and maintenance of bridges rested on appellant. (2) Respondent district being in process of organization at time of passage of Act of 1913 is not liable for the building and maintenance of bridges over its ditches, whether it be held that the district was or was not reorganized under the Act of 1913. (3) Even if it be held that the obligation rests on the respondent to build bridges over its ditches in the first place, it has done this

and the burden of maintenance rests on county. (a) The bridges by law have become the property of the public. (b) There is no law requiring the district to maintain them, and no authority to levy taxes for their maintenance. (4) Even at common law, under the facts in this case, the burden of maintaining these bridges would rest on the county. (5) Under the equities plead and the proof, the drainage ditches have become the main streams, and old bridges are no longer needed, and the burden rests on the county to maintain those over the main and lateral ditches.

LINDSAY, C.—By this action Cass County seeks to compel defendant, a drainage district organized by decree of the circuit court of that county, to construct or re-construct, and to repair and maintain bridges upon the public highways in the county, crossed by ditches made by the district.

The relief asked is by way of a mandatory injunction. A sharp issue presented is the question whether the defendant district was organized under and is subject to the provisions of the Drainage Act of 1913 (Laws 1913, pp. 232-267; Art. I, Chap. 28, R. S. 1919), or was organized under and subject to the provisions of Article I, Chapter 41, Revised Statutes 1909, and the repealing and amendatory Act of 1911.

The contention of the defendant district is that it was organized under the earlier act, whereby, as has been held in numerous decisions, the duty to construct such bridges was imposed upon the county. [State ex rel. v. Chariton Drainage District, 252 Mo. 345; State ex rel. v. Little River Drainage District, 269 Mo. 444; State ex rel. Caruthers v. Little River Drainage District, 271 Mo. 429.] There is also a controversy upon the question whether the county or the district must repair and maintain bridges already constructed. The bridges involved, except one, were constructed by the district at the time of and in connection with the making of the ditches. One bridge, already existing, was moved and

re-located by the district. Within a few years after the
making of the ditches, there was a great enlargement of
them by the action of the water, and several of the bridges
went out, and others were rendered unsafe and in need
of re-adjustment and repairs.

Under the foregoing, and additional to the question
as to which of the legislative acts is to be taken as de-
fining the rights and duties of the parties, there is dis-
cussion in the briefs of counsel, upon the question of
the common-law duty and liability of the district, as the
Organization. party whose act made necessary the con-
struction and maintenance of bridges upon
the highways intersected by those ditches. First in or-
der, and in importance, is the determination of the dis-
pute as to which legislative act governs. Was the de-
fendant district organized under the Act of 1913? The
final decree incorporating the defendant district was
entered in October, 1914. We find from the record made
that the original articles of association for the organi-
zation of the district, were filed on November 2, 1912.
Process issued thereon, and an order of publication was
made, and service was had personally, or by publica-
tion upon nearly all of the non-petitioners before the
next, the January, 1913, term. At that term, on Feb-
ruary 3, 1913, certain of the non-petitioners took leave
to answer, and an *alias* order of publication was made
against certain named non-petitioners not theretofore
served. A judgment by default was then rendered
against the parties who had been served personally, or
by publication, and the cause was continued to the next
term. It is conceded that all of the parties non-peti-
tioners, were served personally, or by publication. At
the May term, 1913, certain amendments of the petition
and articles of association were made by interlineation.

The record here does not show the proceedings which
immediately followed the one just mentioned, but shows
that later the incorporators filed in the proceeding their
amended petition and articles of association. The rec-
ord entry introduced shows the filing of this on Febru-

ary 7, 1914, but the final decree recites the filing of an amended petition and articles at the May term, 1914. The instrument so filed, in form, both a petition and articles of association, ran as follows: ''Your petitioners for their amended petition and articles of association herein, leave of court first obtained, state: That be it known, that we, whose names are subscribed to the original petition filed herein, and also who at the first filing of the original petition owned the majority of acres in a contiguous body of swamp land located along Grand River in Cass and Bates counties, Missouri, desiring to form and organize a drainage district for the purpose of protecting and reclaiming said lands from the effects of water, by drainage or otherwise for sanitary and agricultural purposes as provided by Article One (I), Chapter Forty-one (41), of the Revised Statutes of 1909 and amendments thereto by the laws of Missouri enacted in 1911 and found on pages 205 to 222 of the said Statutes of Missouri, as the same were amended by the Laws of Missouri enacted in 1913 and found on pages 232 to 267 of said Statutes of Missouri, do hereby make and adopt the following as amendatory of the original Articles of Association by us signed.'' It then continued setting out the particulars.

Paragraph One gave the name of the proposed district, and the period of fifty years for corporate continuance.

Paragraph Two set out the boundary and exterior limits of the district, in detail. (It is recited in the abstract that the boundary lines so set out were generally the same as those set out in the original articles, but some additional land was included, and some in the original was left out, making the total acreage somewhat less than that included in the original).

Paragraph Three gave the names and places of residence of owners of the land who were known, with the description of the lands or property owned by each.

Paragraph Four gave a list of the owners who were not petitioners and description of their lands and de-

scription of the lands and interest of unknown persons and asked for an order of notice by publication as to such persons.

Paragraph Five set forth that of the total of 18,876 acres in the proposed district, 11,089 acres were owned by the petitioners and 7,787 by non-petitioners.

By Paragraph Six, it was stated that the owners "whose names are subscribed hereto" obligated themselves to pay the tax or taxes assessed against their lands for the expenses of organization and of the improvements to be made, and they prayed that the lands described "be declared a drainage district under the provisions of the statutes of Missouri aforesaid." An order of publication upon the amended petition and articles was made, and publication was then had in certain newspapers in Bates and Cass counties.

The notices described all the lands within the district as bounded in the amended articles, and the names of the several owners, their places of residence, and the number of acres owned by each, and the order and notices, by reference, were based upon the amended petition and articles of association, and the notices advised all parties interested "that articles of association and amendments thereof, asking that the foregoing lands and other property be formed into a drainage district, under the provisions" of the Drainage Act of 1913, had been filed. The notices particularly identified that act by quoting the title thereof in full, and as having repealed Article I of Chapter 41, Revised Statutes 1909, and the Act of 1911. The parties thereby were notified to appear at the May term, 1914, "and show cause, if any there be, why said drainage district as set forth in the articles of association as amended, shall not be organized as a public corporation in the State of Missouri." Proof of publication of the notice was duly made.

The final decree is in two parts. The first part was entered on September 7, 1914. Therein the court found that all the parties defendant had been duly notified

personally, and by publication and by waiver of service duly signed and filed, and the order recited that the "cause, all and singular, is taken up and submitted to the court upon the petition, amended petition, pleadings and articles of association, signed and filed herein, and upon the objections filed, and upon evidence offered and heard, in behalf of the petitioners, and that offered and heard in behalf of the defendant objectors, and objecting petitioners," and the cause was thereupon taken under advisement by the court.

The final part of the decree was entered on October 16, 1914. In that decree the court made recital that the petition and articles of association were duly signed and filed in the office of the clerk on the second day of November, 1912, and made a finding of service had upon all defendants more than thirty days "before the first day of the last May term of this court." The decree then recited the filing of "an amended petition" at the preceding May term, and the making of an order of publication thereon and found that due proof had been made of said publication. The decree, continuing, contains the finding by the court "that said petition, amended petiton and articles of association filed herein, were and are *duly signed by a majority in interest of the owners,*" etc.

The decree in its findings, makes findings conformable to the terms of the amended petition and articles of association in all respects. The recital is that the court "finds that the said petition and amended petition and articles of association were signed by the owners of 11,089 acres of said body and the non-petitioners owned only 77,087 acres of the said body."

In the next clause of the decree the court again recited a finding of the majority of the landowners "having signed articles of association in which the name of said district is stated to be 'The Grand River Drainage District of Cass and Bates Counties,' " and the number of years it was to continue, as fifty years.

The court made the finding, "that by the terms of said articles of association as amended" the owners had obligated themselves to pay the taxes assessed, etc., and then set forth as a part of the decree, "certain articles of association as amended and filed, omitting the signatures."

The decree then set out the said amended petition and articles. Thus setting forth the foregoing, and other findings, the decree proceeds, creating and establishing the district, in accordance with the respective conditions set forth in the amended petition and articles of association. The closing part of the final decree is as follows:

"And the court doth further order, adjudge and decree that the said Drainage District be and the same is hereby formed, created, organized and incorporated in accordance with said articles of incorporation so signed by the said petitioners and filed herein, as the Drainage District with the boundaries as hereinbefore set out and described in the said articles of association; said distrist to include all the land in said boundaries described in said amended articles of association as hereinabove set forth.

"That said Drainage District shall be created and incorporated in and by the name of 'The Grand River Drainage District of Cass and Bates Counties, Missouri,' under which name it shall and may sue and be sued, plead and be impleaded in all the courts of law in this State; that such Drainage District and incorporation shall be continued as such under such name for a period of fifty years and shall possess and exercise all the rights, powers and authority given and conferred by and under the laws as provided under Article I, Chapter 41, Revised Statutes 1909, as amended by the Acts of 1913, amending said article and consisting of Sections 1 to 63, inclusive, as shown by pages 233 to 267, inclusive, of the Articles of the General Assembly of the State of Missouri, for the year 1913.

"It is further ordered, adjudged and decreed by the court that the said Drainage District as now formed, created and incorporated, shall consist of, comprise and embrace therein all the land stated in the amended articles of association as hereinbefore set forth in this decree, and be bound by the boundaries also as herein set forth."

The contention of counsel for defendant district is that the purpose of the petitioners and their attorneys, in the filing of the amended petition and articles, and the effect of the proceedings had thereunder, was to avail themselves of the procedural benefits to be had under the Acts of 1913, but not to surrender any of the immunities and privileges attendant upon organization under the prior acts.

It stands conceded that the original articles of association were signed by the petitioners themselves and that service was had personally or by publication under those articles, and the court had acquired complete jurisdiction of the cause, as one formulated under those articles, and under the provisions of then existing acts. But no final hearing was had thereon, nor any decree entered incorporating a district prior to the filing of the amended petition and articles of association. No district had then been organized, but the status existing could be no more than that of a district in "process of organization."

The contentions of counsel for the district are founded in the main upon the claim of fact that the petitioners did not themselves sign the amended petition and articles, but that their names were signed thereto by one of their attorneys; that such signing was not sufficient; that the recitals in the record do not show, and are not conclusive of the signing of the amended petition and articles by the petitioners, and not conclusive that there was both an amended petition and amended articles, and a decree effectuating the same fully under the Act of 1913; and, upon the claim that there was no notice published,

in accordance with Section 54 of the Act of 1913. [Sec. 4430, R. S. 1919.]

Counsel call attention to the fact that in the record made February 7, 1914, it was recited that the petitioners had filed their "amended petition" and urge that, thereby and therein, nothing was said about articles of association or amended ones; that in the decree of October 16, 1914, reference was made to the petition and articles of association filed November 2, 1912, followed by recital that "at the last May term of the court there had been filed an amended petition," and that further on in the decree the court referred to the "petition, amended petition and articles of association." They argue that the one amendatory paper filed was headed "amended petition," and that, while its recitals are set forth in full in the record, and ran: "that for amended petition and articles of association," it does not state "amended articles of association." This seems to be a contention that the word "amended," although qualifying the word "petition," does not qualify the words "amended articles of association." They then direct attention to the language of the decree, wherein, after setting out the instrument, it recites: "which said articles were signed by the names of all the petitioners as heretofore set forth in the record."

The argument from this is that the decree does not affirmatively show that new or amendatory articles of association were ever signed by the petitioners. Upon that theory, the contention is that the testimony of Judge Glenn, one of the attorneys of the petitioners, admitted over the objection of plaintiff, was competent to explain the record, and to show that the names of the petitioners to the amended petition, and articles, were signed by him. These contentions cannot be allowed in the face of plain recitals in the decree. The decree shows, by what is copied into it, the filing of amended articles of association, and of an amended petition, joined and embodied in one instrument, and it was a complete instrument. "This paper called by the statute 'articles of association'

is in effect the first pleading in the case." [Sibbett v. Steele, 240 Mo. l. c. 94.] Clearly the decree refers to this complete instrument, and is founded upon it whether it is called, as it sometimes is, "amended petition" or, "amended petition and articles of association." The decree is not subject to attack or explanation as to the fact, or conditions of the signing of it, when it recites, as it does: "and the court finds the facts to be that said petition, and amended petition and articles of association filed herein, were and are duly signed by a majority in interest of the owners," etc., and again recites: "and the court further finds that the said petition and amended petition, and articles of association were signed by the owners of 11,089 acres of said body, and the non-petitioners own only 7,087 acres of said body." There was and is no necessity for explanation, or ground making competent such oral testimony in this collateral proceeding. The judgment, by its recitals, is conclusive that there was an amended petition and amended articles of association, properly signed and filed. [State ex inf. McAllister v. Albany Drainage District, 290 Mo. 33; State ex rel. v. Homer, 249 Mo. 58; Nodaway County v. Williams, 199 S. W. 224.] Beyond that, the signing of the amended petition and articles of association by the attorney for the petitioners was sufficient. What constituted amendments in the new petition and articles were germane to the original articles and to their purpose. What was said in State ex inf. v. Miss. & Fox River District, 292 Mo. l. c. 708, is applicable here: "No question is raised with respect to the sufficiency of the original articles of association, or of the statutory notice immediately given by the clerk in whose office they were filed. It is the contention of respondent (plaintiff), however, that the amended articles of association on which the decree of incorporation was based did not conform to the statutory requirements in that they were not signed by the landowners themselves. The statute does not provide that the petitioning landowners shall by their own hands respectively affix their names to the

articles of association. Its language in this respect is this: 'The owners of a majority of the acreage . . . may make and sign articles of association.' The owners in the proceeding under review did sign the amended articles by their counsel of record. *Qui facit per alium facit per se.* A question might be raised as to the authority of counsel in the premises. But it must be evident that even if a previous authorization had not been expressly or impliedly given them to sign the names of their clients to the amended petition, their acts in so doing were ratified and confirmed by acquiescence and adoption on the part of all their principals except those as to whom the proceeding was subsequently dismissed.''

Our attention is called to the decision in Fabius Drainage District v. Scott, 240 Mo. 31. In that case the articles were signed by the petitioners. No prayer for a decree for incorporation followed the articles, but a petition, containing a prayer for a decree of incorporation, signed by the attorneys as such, was filed as a separate paper. This court expressly, disclaimed a holding that the prayer for a decree for incorporation could not properly be inserted in or made a part of the articles of association. The holding was that the statute did not require the petitioners, as such, to sign the petition, if the petition was presented as a separate pleading filed with the articles. The attorneys for the petitioners could sign the petition itself, the petitioners having themselves signed the articles. The case did not deal with the question of signing an amended petition or amended articles. We see nothing in what was there said, contrary to what we have heretofore held under the facts in this record.

Counsel for defendant also urge that the notice required by Section 4430, Revised Statutes 1919, Section 54, of the Act of 1913, was never published. That section, and the notice therein provided for, have reference to a proceeding for the reorganization of a district, existing at the time the proceedings to reorganize were instituted. This is clear not only from the words used in

that section, but also from the terms of the preceding
section. Section 4429 provides: "Any drainage dis-
trict heretofore organized and any district that is now
in process of organization or any drainage district that
may hereafter be organized under any previous or exist-
ing law of this State may organize under the provisions
of this article, and after so organized shall be entitled
to the benefits of all provisions of this article and any or
all laws amendatory hereof." Section 4429 expressly
gives power to "any district that is now in process of
organization" to organize under the provisions of the
article. But the other provisions of that section specify
the manner in which an existing district may be re-or-
ganized, and prescribe certain limitations. It does not
provide that an existing drainage district, as such, may
re-organize, but the provision is: "The owners of a
majority of acreage of any existing drainage district
may make and sign articles of association in which shall
be stated," etc. The limitations stated are that the dis-
trict so to be re-organized must continue under its form-
er name, and that the number of years of its continuance
cannot be fewer than the life of any of its existing ob-
ligations; and the articles must state that its boundaries,
as so re-organized, are to be the same as those of the
already existing organization. In this case the decree
is specific in following the boundaries in the amended
articles.

It is clear that the petitioners acting in the proceed-
ings here involved, were not acting under those provisions
of Section 4429, last referred to, nor under the provisions
of Section 4430. The proceeding was not the re-organi-
zation of an old district. There was no district existing.
There had been nothing more than a judgment by de-
fault, against a part (the greater number) of the non-
petitioners. Having gone that far, the incorporators
paused. The statutes under which they were proceeding
had been repealed, but the repealing statute, by Section
4438, Revised Statutes 1919, in saving to them their
right and remedy to go forward to incorporation under

the old statute, extended also the right, as a district in process of organization, to proceed to an organization under the new act. The petitioners being in court and having brought in the non-petitioners, availed themselves of the right given. They abandoned their first petition and articles of association, as a pleading which had not ripened into a final decree, and formulated a petition and articles conformable to the provisions of the new act; and, the notice required to be given and which was given, was the notice required by Section 3, of the Act of 1913 (Sec. 4379, R. S. 1919). In giving a notice meeting the requirements of that section, as upon an original petition and articles of association to organize under the Act of 1913, they made the notice demonstrate also the fact that the incorporation was sought under the articles conformable to that act, but amendatory of, and substituted for, other articles under a previous act. This was appropriate to their status as incorporators of a district in process of organization. The record, in its scope and details, is inconsistent with the contention that the petitioners intended to do no more, and actually did no more, than to avail themselves of the simplified procedure allowed under the Act of 1913. If they were and fully and for all purposes within the terms of that act, in the character of the amended petition and articles of association, in the authoritative effect of the signing of the articles, and in findings recited in the decree, then they are not within it for any purpose. But we hold that the defendant is a drainage district organized under the provisions of the Act of 1913, and that its rights and its responsibilities are to be measured by the provisions of that act.

After its incorporation, and in proceeding to the making of the ditches under the plan of reclamation

Cost of Bridges.

adopted, the defendant gave twenty days' notice to the county court of the necessity for the construction of the bridges and demanded that the county proceed to construct the same. The county refused to do so.

The defendant then, at a cost of about $25,000, constructed bridges according to the plans and specifications of its chief engineer.

Plaintiff alleged in its petition that the cost of replacing and restoring these bridges would be in excess of $75,000, and introduced evidence tending to show such cost.

The defendant, by its answer, while averring that it was not bound by the Act of 1913, and was not liable to construct the bridges, pleaded that if it was liable to build the bridges, it had performed its whole duty through its construction of them in the first instance, and that, thereafter, the obligation was upon the county to maintain and renew them. The defendant further pleaded that by the plan of reclamation the ditches made had become the main channel of Grand River; that the old channel within the district was filling up so rapidly throughout the length of the district, that within a very few years there would be no necessity for the maintenance of the existing old bridges, located across the channel of Grand River, away from defendants' ditch.

Considerable evidence was introduced as to the extent—four, five or six feet—to which the old channel had filled at the time of the trial, and also as to the practicability, in time, of crossing the old channel upon fills, with only a culvert or sluice-way for the passage of water. This was admitted over the objections of plaintiff.

The plaintiff asked the court to give certain declarations of law: That defendant was organized under the provisions of the Act of 1913; that it was the duty of defendant to rebuild the bridges shown to have been out of place, and to maintain the bridges crossing the ditches on public highways; that the testimony as to the filling up of the old channel, and the probability of abandonment of bridges upon the old channel, was incompetent; and, by way of summary, that the plaintiff was entitled to a permanent writ, requiring the plaintiff to replace and rebuild the bridges shown to be out of

place, and to maintain all the bridges referred to in plaintiff's amended petition.

The court refused all these declarations, but found for defendant, and dismissed the plaintiff's bill.

From the foregoing, it cannot be determined whether the court was of the opinion that defendant district was under no obligation to construct bridges, as being a district entitled to immunity from that burden, under the acts in force previous to the Act of 1913, and under the reservations contained in the later act, or, that being subject to the later act, it had fulfilled the requirements of that act and was not required to replace, or maintain the bridges, constructed by it at the time the ditches were made.

Counsel for defendant urge that whether it be held defendant district was or was not reorganized under the Act of 1913, it still is not liable, because of the reservations contained in the 1913 Act. Attention is called to Sections 52, 57 and 62 (Secs. 4429, 4433, 4438, R. S. 1919). Section 52 (Laws 1913, p. 263) provides that any drainage district heretofore organized or in process of organization, may elect in the manner hereinafter provided, to become and be reorganized under the provisions of that act. Then follows the proviso: "That such reorganization shall not be required of districts heretofore organized or in process of organization at the time of passage of this act under the provisions of Article I, Chapter 41, of the Revised Statutes of 1909, but all such districts shall have the right to proceed under the provisions of this act."

Section 57 provides as to an existing district, reorganized under the Act of 1913, that "all rights and privileges and immunities held or enjoyed by the old district under its former organization, shall be held and enjoyed by the new district when the same shall organize under the provision of this act."

From what has heretofore been shown, it is clear that the defendant district did not follow the proceeding for reorganization, but did proceed under

articles called amendatory, but complete in themselves and founded upon the provisions of the new act, and the notice given was not a notice for reorganization, provided for under Section 54, but was the notice for the formation of a district under the terms of Section 3 of the act. The reservation of rights and immunities under Section 57 is a reservation of rights and immunities held by an old district, vested in it under its former organization. The provision of Section 62 is that the repeal of the statutes of 1909 and of the Act of 1911 "shall not have the effect of suspending, abating, abridging, impairing, vitiating or nullifying any right, power, remedy or lien heretofore given, created or conferred upon any drainage district heretofore organized or in the process of organization at the time of passage of this act, under any law of this State, but all such rights, powers, remedies and liens are hereby directly preserved to all such drainage districts."

Counsel for defendant cite State ex rel. Hill v. Pettingill, 279 Mo. 31, in support of their contention under the above-mentioned sections. That case was one upon an application for a rule in prohibition, and arose out of a proceeding by a levee district to condemn land. The district had been organized under an earlier act, and had not been reorganized under the Act of 1913 concerning levee districts (Laws 1913, p. 290), but had amended its plan of reclamation under the latter act. It was proceeding to condemn, by the method provided in the Act of 1913. The holding was that the district was not compelled to re-organize, but had the power to act under its original organization, and, in exerting its power, could use the method of the new act. On the way to that conclusion the opinion (l. c. 35-36) discussed certain sections of the Levee District Act of 1913, having their equivalents in the Drainage District Act of 1913. It was pointed out that Section 53 of the Act of 1913 concerning levees was "legally (and almost literally) indentical with Section 62 of the act concerning drainage districts." It was held that the section

carefully protected the rights, powers, liens and remedies from impairment by the new act. The case thus involved only the question of the procedural rights of an old and existing district as affected by the new law. The holding was that "in the case of a district which was organized prior to 1913, and which had not re-organized under the act of that year, the new law left its rights, powers, liens, obligations and remedies unaffected, but gave the board of supervisors of such a district a right to employ as they might choose, the machinery of the old law or the new act in the enforcement thereof." The issue here is as to an immunity claimed for a district not re-organized, but organized under the new law; and the claim is founded upon an organization, projected under the old law, but not completed under that law.

Attention is also called to State ex rel. v. Inter-River Drainage District, 296 Mo. 320. In that case the district was one organized prior to the time of the passage of the Act of 1913. The suit was one to compel the district to build bridges. It was conceded that the district had not reorganized under the Act of 1913. The case did not call for a decision upon the liability of the district had it been re-organized under the Act of 1913. The relator in that case relied upon the decision in State ex rel. Ashby v. Medicine Creek Drainage District, 284 Mo. 636.

The decision denying the contention of relator was based upon the fact that the district had been organized under the old acts, and had never re-organized under the Act of 1913, and that its immunity from the burden of building bridges attaching to its formation under the old acts had not been taken away under the provisions of the new act, nor taken away because the district, subsequent to its organization, had adopted certain administrative measures as to certification of taxes, after the manner provided in the Act of 1913. It was held that the adoption of these measures and methods of procedure did not constitute a surrender of the rights

and immunities vested in the district by virtue of its organization under the old acts, and that the district was not required to reorganize in order that it might adopt such administrative details, but that the right to do so was one conferred upon or saved to it, as an existing district, by the Act of 1913, and such measures could be adopted at the election of the district, as such, without re-organization.

The Act of 1913 repealed the statutes under which, in this case, the organization was begun, but reserved to the petitioners the right to the formation of a district under the articles signed, and under the old statutes. But for their original articles of association the petitioners substituted other articles, adopting for all purposes the provisions of the Act of 1913, and the district formed and incorporated by the decree is constituted as the district prayed for in the amended articles.

In State ex rel. Ashby v. Medicine Creek Drainage District, 284 Mo. 636, the suit was by a county to compel the defendant district to construct and maintain bridges over public highways, crossed by the ditches of the district, and it was a district organized under the Act of 1913. The provisions of that act were exhaustively discussed, and the changes embodied therein, over the former provisions, were pointed out. The most significant change made was that found in Section 30 of the act, concerning the building of bridges, and limiting the application of the word "corporation" as used in that section. The decisions in the Chariton River and Little River Drainage District cases had turned upon the meaning to be given to the word "corporation," and had applied the word to counties; but the proviso in Section 30 is, that "the word 'corporation' as used in this section shall not apply to counties." Numerous sections, and various considerations bearing upon the question as to which of the two organizations had imposed upon it the duty of constructing and maintaining bridges, over ditches crossing public highways, were discussed fully. The decision is founded upon the considerations that the

drainage district is authorized to construct and maintain any ditch across any of the public highways of the State without proceedings for the condemnation of the same or being liable for the damages therefor; that the further provision is that a bridge shall be constructed and maintained over such drainage ditch where the same crosses such highway; that such bridge must be constructed in accordance with the plans, specifications and orders made or approved by the chief engineer of the drainage district, and such plans are not made subject to approval by the county authorities; that the counties are excluded from the class of corporations required to construct such bridges, or pay for the construction of same if done by the drainage district; that under the common law that duty would rest upon the drainage district as the person having made necessary the construction of such bridges; that since the duty is not imposed upon the county to construct such bridges, the drainage district must do so. The decision further means that since the duty to construct and maintain such bridges, as "works" or "improvements" made necessary by its plan of reclamation, rests upon the district, it is empowered to levy a maintenance tax for the maintenance of such works and improvements.

In the Chariton River and Inter-River Drainage District cases, the old statute upon the subject of responsibility for the building of bridges was criticized for its lack of clearness. Some like expressions are used in the Medicine Creek Drainage District case, concerning the Act of 1913, upon the same subject. But, considering the terms of the latter act, its relation in time to the prior decisions referred to, and considering the holding in the Medicine Creek Drainage District case, we feel constrained to hold here that the duty to construct and maintain the bridges rests upon defendant drainage district.

Under that conclusion it follows -that the judgment must be reversed, and the cause remanded for further proceedings to that end. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LIND-SAY, C., is adopted as the opinion of the court. All of the judges concur.